FRANCIS C. WELCH & another, administrators, *vs.* TREASURER
AND RECEIVER GENERAL.

Essex.     November 4, 1915. — March 1, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Tax,* On legacies and successions. *Jurisdiction.    Conflict of Laws.    Words,*
"Legally subject."

Under St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, and St.
1912, c. 678, § 2, providing in substance that property of a resident of this
Commonwealth which is not therein at the time of his death shall not be subject
to a legacy tax if "legally subject" in another State or country to a tax of like
character and amount to that here imposed, and that, if it is "legally subject"
in such other State or country to a tax of like character but less in amount than
that here imposed, which shall be actually paid or secured, it shall be taxable
here only for the difference, it is for the courts of this Commonwealth to determine
whether such property is "legally subject" to such a tax in another State or
country.
By the foregoing provisions, the Legislature intended to surrender the power of this
Commonwealth to impose a succession tax upon property of a resident of this
Commonwealth which is not therein at the time of his death only when a succes-

---

sion tax has been levied by another State or country which it was within the jurisdictional power of such State or country to levy.

Jurisdiction for the purpose of imposing a succession tax exists only when the exercise of some essential privilege incident to the transfer of the title depends for its legality upon the law of the State levying the tax.

Where a resident of this Commonwealth at the time of his death owned shares of stock in a corporation incorporated in another State, such shares have a *situs* both in this Commonwealth, which is the owner's domicil, and in such other State, which is the domicil of the corporation, sufficient to give jurisdictional power to both States to impose a succession tax.

Where a resident of this Commonwealth at the time of his death owned shares of stock in a corporation incorporated in another State and owning property in a third State, such shares are not, under the provisions of St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, and St. 1912, c. 678, § 2, "legally subject" to a succession tax in the third State, because that State has no jurisdictional power to levy the tax; and, even if such a tax is levied and paid in such State, there should not be any deduction by reason of such payment from the tax here imposed upon the shares by the provisions of the statute.

If a resident of this Commonwealth at the time of his death owns shares of capital stock in a railroad corporation incorporated in three other States in which it operates its railroad, each of such three other States has jurisdictional power to impose a succession tax upon the shares.

In the absence of something to indicate inequality before the law, inevitable and general disproportion, or oppressiveness or discrimination, a succession tax imposed by another State within its jurisdictional powers upon shares of stock in a corporation there incorporated, is a tax to which the shares there are "legally subject," and its amount cannot be questioned in the computation of the tax to be imposed in this Commonwealth under the provisions of St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, and St. 1912, c. 678, § 2.

In this case in imposing a succession tax upon shares of the capital stock of a railroad corporation incorporated in Michigan, Illinois and Wisconsin, which were owned by a decedent domiciled in Massachusetts at the time of his death, a Probate Court of the State of Michigan computed the tax as though the corporation were incorporated solely in Michigan. The amount of the tax was paid without the matter being adjudicated in any higher court, and this court *held* that, the State of Michigan having jurisdiction to impose a succession tax and it not appearing that the tax was oppressive, irrational or disproportional in law, its amount was not open to question, and therefore it was a succession tax to which the shares were "legally subject" in Michigan and, it having been paid, its amount should be considered in computing the succession tax due in this Commonwealth under St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, and St. 1912, c. 678, § 2.

Rugg, C. J. This is a petition for the refunding of an inheritance tax. The petitioners are administrators of the estate of Eleonora R. Sears, late of Beverly in this Commonwealth. The issue relates to the inheritance tax payable on account of two items of railroad stock, upon which a similar tax has been paid in Michigan. The deceased owned two hundred forty-five shares of stock of the

Chicago and Northwestern Railway Company. That corporation was organized and exists under the laws of the States of Illinois, Wisconsin and Michigan. It has but one capital stock and conducts its business as a single corporation. Seven per cent in value of its total property was situated in the State of Michigan. The deceased also owned one hundred shares of the preferred stock of the Chicago, Milwaukee and St. Paul Railway Company. That corporation was organized and exists solely under the laws of the State of Wisconsin, although it has lines of railroad in that State, in Michigan and in other States. By judicial proceedings in Wisconsin, it was determined that a tax was due to that sovereignty from the estate of the deceased on account of her shares in the Chicago and Northwestern Railway Company, at the rate of one per cent upon fifty-four and six hundred and three thousandths per cent of the value of her holdings of that stock, that being the percentage of the total value of the property of that corporation which is situated in Wisconsin. The State of Wisconsin also collected a tax at the rate of one per cent upon the entire value of her holdings of stock in the Chicago, Milwaukee and St. Paul Railway Company. By judicial proceedings in the State of Michigan, it was determined that a tax was due to that State from the estate of the deceased, on account of her ownership of shares of stock in these two corporations, at the rate of one per cent upon the full value of each of such holdings. These taxes have been paid. Other property of the deceased was subject to an excise succession tax in Michigan, which has been paid and about which no question is made. Subsequently, the tax commissioner of this Commonwealth, in determining the taxes due on account of the stock here in question, deducted from the taxes payable in this Commonwealth the full amount of the taxes paid to the State of Wisconsin. He declined to deduct any part of the taxes paid to the State of Michigan on account of her ownership of stock in the Chicago, Milwaukee and St. Paul Railway Company, and deducted only a part of the taxes paid to Michigan on account of her ownership of shares of stock in the Chicago and Northwestern Railway Company.

The general question, whether the petitioners are entitled to recover in whole or in part, depends upon an interpretation of the controlling section of our tax law. St. 1909, c. 490, Part IV, § 3,

as amended by St. 1911, c. 502, § 1, and St. 1912, c. 678, § 2.*
The crucial point is to determine the meaning of the words "legally
subject in another State or country to a tax" as applicable to prop-
erty not within the Commonwealth belonging to the estate of a
deceased resident and actually taxed in another State. It has
been decided by a court of competent jurisdiction, though not by
the highest court, in the State of Michigan, that both these hold-
ings of stock were subject to a succession tax in that State, and that
the amount which has been paid is the correct amount. It is not
contended by the defendant that the laws of Michigan did not
authorize the imposition of these taxes. Therefore, it is not neces-
sary to discuss or decide whether this court would be required in
interpreting our statute to review at all and, if at all, to what
extent it would review the interpretation of the tax statutes of
another State given by the courts of that State. But it is urged
by the defendant that Michigan had no jurisdiction to impose
such taxes and that that question is one which must be deter-
mined by Massachusetts tax officers and courts.

The governing words occur in a Massachusetts tax statute,
which is the guide for the tax officers of this Commonwealth in
the performance of their duties. Whether property is legally sub-
ject to a tax in another State is not a question in its essence de-
pendent upon the sole determination of the taxing State. That
question often is settled by the Supreme Court of the United States
in passing upon contentions arising under the Fourteenth Amend-
ment. The amount of the tax due to this Commonwealth depends
upon a correct decision whether the property is subject to taxation
in another State or country. The amount of a tax due to any
State is one naturally to be decided by the courts of the taxing

---

* "Property of a resident of the Commonwealth which is not therein at the
time of his death, . . . shall not be taxable under the provisions of this part
if legally subject in another State or country to a tax of like character and
amount to that hereby imposed, and if such tax be actually paid or guaranteed
or secured in accordance with law in such other State or country; if legally
subject in another State or country to a tax of like character but of less amount
than that hereby imposed and such tax be actually paid or guaranteed or se-
cured as aforesaid, such property shall be taxable under this part to the extent
of the difference between the tax thus actually paid, guaranteed or secured,
and the amount for which such property would otherwise be liable here-
under. . . ."

State. Whether such property legally can be made subject to taxation in another State depends upon general principles of law as to which an authoritative interpretation as between the several States is made by the Supreme Court of the United States.

We are of opinion that the courts of this Commonwealth must decide whether the property of a deceased resident is "legally subject" to taxation in another State or country, in order to decide what tax is due to this Commonwealth. If the Legislature had intended to leave that question to the decision of the courts of other States and countries, it hardly would have used these words. "Legally" well might have been omitted and the word "subjected" substituted for "subject." At all events, these words are not apt to express the thought that our tax officers and courts must stop short with the information that some other State or country has exacted a tax, and make no further inquiry. The statute puts upon them the further duty of ascertaining whether the property which has been thus taxed was in law subject to taxation. Whether property is legally subject to taxation in another State or country depends fundamentally upon the jurisdiction of that other State or country over the property. Jurisdiction as between the several States and as between sovereign nations always is a question which can be inquired into and adjudicated whenever it is pertinent. The declaration in this respect by the authorities of one State, or nation, legislative or judicial, is not binding upon another State or nation. The commonest illustration is when the validity of a judgment rendered by a court of another State is challenged. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 205 to 212, (affirmed in *Bigelow* v. *Old Dominion Copper Mining & Smelting Co.* 225 U. S. 111,) where the cases are collected. There is no inherent difficulty in determining such jurisdiction.

The words used in the instant statute by the Legislature indicate a purpose to surrender the power of this Commonwealth to tax only when a tax within the jurisdictional power of the foreign State or country has been levied, and not when one has been extorted without legal authority. This imposes no hardship on the taxpayer beyond that which always exists when one has to defend himself against a wrong. It is always within the power of a taxpayer to obtain an authoritative determination binding upon

everybody whether he is subject to the jurisdiction of another State of the Union asserting power to tax. Otherwise, in order to avoid double taxation, this Commonwealth might be at the mercy of every other State which asserted a right to tax and possessed the power to compel the payment of the tax. If the taxpayer has not interest enough in securing a final and binding decision as to his liability to a tax in the other State, he ought not to complain if that matter is decided by the courts of his own State. Of course there is no such common arbiter as the United States Supreme Court to settle the question of jurisdiction to tax between a single State and a foreign country. Whether in that case the State with respect to its citizen acts as a complete and unrestrained sovereign need not be inquired now. See *United States* v. *Bennett*, 232 U. S. 299; *Bemis* v. *Aldermen of Boston*, 14 Allen, 366. But that question seems likely to arise infrequently.

So far as jurisdiction to tax is concerned, the question whether the property was legally subject to a similar tax in another State is one to be decided by the courts of this Commonwealth if it has not been decided by the Supreme Court of the United States.

Jurisdiction for the purpose of imposing a succession tax exists only when the exercise of some essential privilege incident to the transfer of the title depends for its legality upon the law of the State levying the tax. *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600. *People* v. *Griffith*, 245 Ill. 532, 537. *Matter of Hull*, 111 App. Div. (N. Y.) 322. *Situs* of the shares of stock within the taxing State is the foundation of jurisdiction to tax. That *situs* ordinarily can be only at the domicil of the owner or at the domicil of the corporation. *In re Enston*, 113 N. Y. 174, 181. *In re James*, 144 N. Y. 6, 10. Doubtless shares of stock have a *situs* sufficient to justify the imposition of a succession tax both at the domicil of the owner of the stock and at the domicil of the corporation. *Moody* v. *Shaw*, 173 Mass. 375. It commonly has been supposed that the certificate of stock in a corporation can have no independent *situs*, dependent upon its physical location, apart from the domicil of the corporation or of the owner. As a general proposition in the absence of special circumstances, that has been decided in this Commonwealth. *Kennedy* v. *Hodges*, 215 Mass. 112, 115. *Clark* v. *Treasurer & Receiver General*, 218 Mass. 292. If, possibly, in some jurisdictions or for some purposes, or by ex-

press statute, it may be where the certificate of stock is physically, *National Safe Deposit Co.* v. *Illinois,* 232 U. S. 58, *Lockwood* v. *United States Steel Corp.* 209 N. Y. 375, that does not help in the present case. Where none of these elements are found, there can be no *situs* for purposes of a succession tax. Jurisdiction is a matter of power over the particular *res* or subject. *Lamar* v. *United States,* 240 U. S. 60, 64. The opportunity to exert mere physical force over other property of the estate of a decedent of course is no warrant for the collection out of it of an alleged tax on property over which it has no taxing jurisdiction.

None of the certificates of stock here in question appear to have been physically in Michigan. Naturally they would be at the domicil of the owner in Massachusetts. The *situs* of intangible personal property follows the person of the owner ordinarily. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 57, 60. There is nothing to indicate that the State of Michigan claimed jurisdiction because of the physical presence of the certificates in that State. It did not have jurisdiction over the shares because of the residence of the owner. Confessedly that was in Massachusetts.

These are the general principles according to which the rights of the parties are governed. It remains to apply them to the two kinds of stock. First, as to the shares of stock in the Chicago, Milwaukee and St. Paul Railway Company. That was organized as a corporation solely under the laws of Wisconsin, owing no corporate existence to the laws of Michigan, but simply having some of its tracks and property within the territory of Michigan. Therefore, the State of Michigan had no jurisdiction over the certificates or shares of stock founded on jurisdiction over the corporation itself as its creature, because the corporation was not established under its laws and owed no allegiance to Michigan as its domiciliary State. The State of its domicil is Wisconsin, under whose laws alone it was organized. Therefore, jurisdiction cannot rest on that element as in *Greves* v. *Shaw,* 173 Mass. 205. The circumstance that there is property of the corporation in Michigan does not confer jurisdiction upon that State to impose a tax on the succession to the shares of stock of the corporation. That property does not in any direct sense belong to the shareholders. The full and complete legal title to it is in the corporation. It is impossible to predicate jurisdiction over non-resident share-

holders in a foreign corporation merely upon the physical presence of property belonging to that corporation within the territory of a State. It is not necessary to discuss whether in any conceivable case subjection to State jurisdiction in this respect might be exacted as a condition for doing domestic business by a foreign corporation within a State, because nothing of that sort appears in the case at bar. The succession to the shares of stock owned by and passing to a resident of Massachusetts in the Wisconsin corporation does not depend in any degree upon the legal or moral support of the laws of Michigan. Hence that State has no jurisdiction to impose a tax upon such succession. The privilege or commodity of passing title to the stock is the thing which is taxed. That requires no sanction of the laws of Michigan for its complete and effective legal transition from ancestor to heir or testator to legatee.

Therefore, we are of opinion that the stock held by the decedent in the Chicago, Milwaukee and St. Paul Railway Company was not subject to the jurisdiction of the State of Michigan for purposes of levying a succession tax.

A different situation exists as to the succession tax on the shares of stock in the Chicago and Northwestern Railway. That corporation was a single corporation so far as concerned its operation, management, stock and profits, but it owed corporate allegiance to each of the States in which it was incorporated. *Attorney General* v. *New York, New Haven, & Hartford Railroad,* 198 Mass. 413; *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 136 U. S. 356, and cases cited. It follows that Michigan as one of the incorporating States had jurisdiction over the corporation and could exercise power over the transfer or succession of its stock. That was settled for this Commonwealth by *Kingsbury* v. *Chapin,* 196 Mass. 533, in a characteristically luminous and convincing opinion by Chief Justice Knowlton. There is no doubt, therefore, of the jurisdiction of Michigan over that corporation for the purpose of imposing a succession tax on the transmission of its shares. The rule enforced by the inferior Michigan court was to collect a succession tax like in amount to that which could have been enforced if the corporation had owed its existence solely to the laws of Michigan. It did not follow the rule laid down in *Kingsbury* v. *Chapin,* 196 Mass. 533, *Matter of Cooley,* 186 N. Y.

220, (see *Matter of Willmer*, 153 App. Div.`(N. Y.) 804, *Matter of Thayer*, 193 N. Y. 430,) *State v. Metz*, 3 Vroom, 199, and *Gardiner* v. *Carter*, 74 N. H. 507, to the effect that in such cases the value of the stock for purpose of calculating the tax should be based upon the value only of the property in the State levying the tax, and that a tax should be levied only upon such portion of the value of each share as is represented by property of the corporation in the taxing State. That appears to us to be the just and equitable view. It is founded upon the principles of interstate comity to be observed in the interpretation of laws which, unless so construed, may afford ground for conflicting and rival claims between the several States and for just complaint as being oppressive in operation. No other view has been expressed by the Supreme Court of Michigan. But we are bound to accept for the moment the decision of the county probate court, from which no appeal was taken, as expressive of the law of that State.

The question arises whether the principle established by *Kingsbury* v. *Chapin*, 196 Mass. 533, is one of constitutional and jurisdictional power or simply of comity and justice in taxation between the several States. A succession tax is not a property tax upon the privilege of receiving property by intestate or testate succession. It is in the strict sense an excise tax. It is like a transfer and other excise taxes. It need not be proportional under our Constitution. It is not subject to the restrictions and limitations which attach to property taxes under the Federal Constitution. *Knowlton* v. *Moore*, 178 U. S. 41. *Blackstone* v. *Miller*, 188 U. S. 189. *Buck* v. *Beach*, 206 U. S. 392, 408. Excise or succession taxes may be measured in part at least by the value of property which is exempt from taxation, such as government bonds, merchandise in bond, and other like tax exempt property. *Plummer* v. *Coler*, 178 U. S. 115. *Commonwealth* v. *Hamilton Co.* 12 Allen, 298; *S. C. sub nom. Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. *Farr Alpaca Co.* v. *Commonwealth*, 212 Mass. 156. *Orr* v. *Gilman*, 183 U. S. 278. Whether property is subject to taxation in another State or country depends upon jurisdiction. If property is subject to the jurisdiction of another taxing sovereignty, the amount of the tax which can be collected ordinarily is a matter for the decision of that sovereignty. It must be assumed because no attack is made in these respects upon the

Michigan succession law that, it operates equally upon all share-holders similarly situated and upon all corporations owing a like corporate allegiance and that it makes no discrimination against some in favor of others.    In the absence of something to indicate inequality before the law, inevitable and general disproportion, or oppressiveness or discrimination, the amount of any particular tax is not open to inquiry in another jurisdiction.    See *Gast Realty & Investment Co.* v. *Schneider Granite Co.* 240 U. S. 55.

It seems to follow that no provision of the Federal Constitution is violated by a State law which establishes a flat and unvarying percentage of value as the tax upon the privilege of transferring every certificate of stock under the sanction of its laws applicable alike to corporations incorporated alone under its laws and to corporations owing a corporate allegiance to several States. Some gauge by which to measure the tax must be adopted.    Doubt-less the same amount might be levied on all transfers, as in stamp taxes.    To impose the tax in proportion to the value of the stock has more elements of fairness.    *Keeney* v. *New York*, 222 U. S. 525, 534.    Since this is an excise tax, the objection that it is measured in part by the value of property outside the State, which would be fatal to the validity of a property tax, *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194, does not prevail.    Property which is not taxable as such may be considered under the Consti-tution in fixing the amount of an excise tax.    *Plummer* v. *Coler*, 178 U. S. 115.    A kindred principle permits an excise tax upon the privi-lege of doing domestic business within the State by a foreign corpo-ration, to be measured by the entire capital stock of such foreign corporation.    *Baltic Mining Co.* v. *Commonwealth*, 207 Mass. 381; *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35; both affirmed in 231 U. S. 68.    See *Dwight* v. *Mayor & Aldermen of Boston*, 12 Allen, 316; *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51.

The conclusion is that the tax levied by Michigan on the Chicago and Northwestern Railway Company stock, although in conflict with the principles established by *Kingsbury* v. *Chapin*, 196 Mass. 533, and contrary to what we believe to be the closest reasonable approximation to fairness, does not infringe any provision of the Federal Constitution or exceed the jurisdictional power of that State.    It is not contrary to common right.    It is not deprivation

of property without due process of law. The State of Michigan had jurisdiction to levy a succession tax. The tax actually levied cannot be said to be oppressive, irrational or disproportionate in law, and therefore must stand. That stock was "legally subject," in the sense in which those words are used in our statute, to the tax levied in Michigan. Hence, its entire amount without diminution should have been considered in determining the succession tax due to Massachusetts.

The decree of the Probate Court * is amended by striking out so much as adjudges that the tax assessed on the stock of the Chicago, Milwaukee and St. Paul Railway Company was wrongly assessed, by making other appropriate modifications rendered necessary thereby, and as thus amended is affirmed.

*So ordered.*

*B. Corneau,* for the plaintiff.

*W. H. Hitchcock,* Assistant Attorney General, for the defendant.

---

* The decree of the Probate Court of Essex County was "that the tax assessed upon the stock of the Chicago & North Western Railway Company to the amount of $172.22 and the tax assessed upon the stock of the Chicago, Milwaukee & St. Paul Railway Company in the amount of $133.00 were wrongly assessed and said taxes amounting in all to $305.22 are hereby abated and the respondent is ordered to pay to the petitioners said amount of $305.22 with interest from January 13, 1915." The Treasurer and Receiver General appealed, and the case was reserved by *Braley,* J., for determination by the full court.