# NORTHERN CENTRAL RAILWAY COMPANY *v.* FIDELITY TRUST COMPANY, ET AL., EXECUTORS AND TRUSTEES.

*Succession Tax—Corporate Stock—Non-resident Decedent.*

The State of Pennsylvania may validly impose a tax on the transfer of stock in the Northern Central Railway Company, owned by a deceased resident of Maryland, since that company is incorporated in both Pennsylvania and Maryland, and consequently the situs of the stock, for taxation purposes, is in both states, although the principal office of the dual corporation is in Maryland.

*Decided January 19th, 1927.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by the Fidelity Trust Company and Frank W. Watts, executors and trustees under the will of Mary Ann Henrietta Watts, deceased, against the Northern Central Railway Company, for a mandatory injunction. From a decree for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Bernard Carter & Sons,* and *Shirley Carter,* submitting on brief, for the appellant.

*Thomas A. Murray,* with whom was *F. Murray Benson* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

In the course of their administration, the executors of the will of Mary Ann Henrietta Watts, a citizen of Maryland, who died in the City of Baltimore, were directed to transfer to the Fidelity Trust Company and Frank W. Watts, trustees under the will, two hundred and eighty shares of the stock of the Northern Central Railway Company, forming part of the decedent's estate. The stock is transferable on the books of the railway company at its principal office in Baltimore. The company declined to make the proposed transfer of the stock from the executors to the trustees without the consent of the State of Pennsylvania, evidencing the payment or waiver of an inheritance tax imposed by one of its laws upon transfers of stock of Pennsylvania corporations. The Northern Central Railway Company was formed in 1854 by the consolidation of four railway companies, three of which had been incorporated under the laws of Pennsylvania and one under a Maryland statute. Concurrent legislative acts of the two states authorized the consolidation. Under the dual incorporation thus accomplished, the North-

ern Central Railway Company operates as a single railroad organization.   The Pennsylvania statute imposing the tax in question specifically includes transfers of stock held by non-resident owners.   It subjects to a penalty any corporation of that state making a taxable transfer before the prescribed tax has been paid.   The question to be decided in this suit is whether, in view of the Fourteenth Amendment of the Federal Constitution, the Pennsylvania tax is validly chargeable on the transfer of Northern Central Railway stock owned by a resident of Maryland and passing, as part of an estate administered under its laws, to beneficiaries who are not residents of Pennsylvania.

The effect of the consolidation, under Maryland legislative sanction, of the constituent railway companies forming the Northern Central Railway system, was to create a corporation of distinctly Maryland origin.   While there was a similar and contemporaneous consolidation in Pennsylvania, the creation of the new corporation in this state was an independent exercise of Maryland sovereignty.   The legal entity thus brought into existence was as completely a Maryland corporation as though the Pennsylvania consolidation had not occurred.   *State v. Northern Central Railway Co.,* 18 Md. 193, 44 Md. 131, 90 Md. 447; *Northern Central Railway Co. v. Herring,* 93 Md. 164.   At the same time the Northern Central Railway Company is a Pennsylvania corporation, deriving full and efficient corporate powers from that state, Each of the co-existing corporations bearing that name is invested with the title to the entire railway system mentioned in the Pennsylvania and Maryland statutes by which their creation was respectively authorized.   In unity of administration, and with respect to their capital stock, they are practically one corporation, but as legal entities they are distinct.   It was said by this Court, in the first of the cases above cited, that the Northern Central Railway Company "must, for the purposes of justice, be treated as a separate corporation by the courts of justice of each government from which it derives its being, that is, as a domestic legal entity

to the extent of the government under which it acts, and as a foreign corporation, as regards the other sources of its existence."

The Supreme Court of Pennsylvania, in *Allegheny v. Cleveland and Pittsburgh R. Co.,* 51 Pa. St. 228, held that the defendant company, having been incorporated first by Ohio and then by Pennsylvania, "became thus a separate corporation in each state." This conclusion was based upon the opinion delivered by Chief Justice Taney, in *Ohio and Mississippi R. Co. v. Wheeler,* 1 Black, 286.

The relations of a Northern Central stockholder to the two railway corporations of that name are identical. The certificate for his shares represents precisely similar interests in the Northern Central Railway Company in each of its separate capacities as a corporation independently created under the laws of the two commonwealths. In considering, therefore, whether the transfer of the stock involved in this case is taxable by the State of Pennsylvania, we must give due regard to the fact that the stock is not the issue solely of the Maryland corporation, but is equally attributable to the Pennsylvania corporation simultaneously created for the same purposes.

The case of *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S. 69,, is said to be conclusive of the question here presented. In that case it was held by the Supreme Court that a North Carolina inheritance tax on the stock of a New Jersey corporation, owned by a resident of Rhode Island, and passing under his will in that state, could not be sustained merely because the corporation was doing business in North Carolina and a large proportion of its property was there located. Mr. Chief Justice Taft said:

"The tax here is not upon property, but upon the right of succession to property, but the principle that the subject to be taxed must be within the jurisdiction of the state applies as well in the case of a transfer tax as in that of a property tax. A state has no power to tax the devolution of the prop-

erty of a non-resident unless it has jurisdiction of the property devolved or transferred. In the matter of intangibles, like choses in action, shares of stock and bonds, the situs of which is with the owner, a transfer tax of course may be properly levied by the state in which he resides. So, too, it is well established that the state in which a corporation is organized may provide in creating it for the taxation in that state of all its shares, whether owned by residents or non-residents. *Hawley v. Malden,* 232 U. S. 1, 12; *Hannis Distilling Co. v. Baltimore,* 216 U. S. 285, 293, 294; *Corry v. Baltimore,* 196 U. S. 466; *Tappan v. Bank,* 19 Wall. 490, 503."

"In this case the jurisdiction of North Carolina rests on the claim that because the New Jersey corporation has two thirds of its property in North Carolina, the state may treat shares of its stock as having a situs in North Carolina to the extent of the ratio in value of its property in North Carolina to all of its property. This is on the theory that the stockholder is the owner of the property of the corporation, and the state which has jurisdiction of any of the corporate property has *pro tanto* jurisdiction of his share of stock. We cannot concur in this view. The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends, arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. But he does not own the corporate property. * * * North Carolina can not control the devolution of New Jersey shares. That is determined by the laws of Rhode Island where the decedent owner lived or by those of New Jersey, because the shares have a situs in the state of incorporation. * * *

"In an *addendum* to its opinion in this case, the Supreme Court of North Carolina suggests that the jurisdiction of the state to tax the shares of the New Jersey corporation may be

based on the view that the corporation has been domesticated in North Carolina. So far as the statutes of the state show, it has been authorized to do and does business in the state, and owns property therein and pays a fee for the permission to do so. It has not been re-incorporated in the state. It is still a foreign corporation and the rights of its stockholders are to be determined accordingly."

An important difference between the case just cited and the one now under decision is in the fact that the tax here in question is upon the transfer of stock of a corporation created by the state whose power to impose the tax is the subject of inquiry. If the New Jersey corporation had been "re-incorporated" in North Carolina, the two cases would be more analogous. In that event the position of North Carolina would have been comparable to that of Pennsylvania in the present case. The principle that shares of corporate stock have a situs in the state of incorporation might then have been found applicable. There was an application of that principle in *Welch v. Treasurer etc.,* 223 Mass. 87, one of the cases cited with approval in the opinion delivered by Mr. Chief Justice Taft from which we have quoted. In the Massachusetts case one of the inquiries was whether stock of a deceased resident of that state in the Chicago and Northwestern Railway Company, a corporation organized under the laws of Illinois, Wisconsin, and Michigan, but having one capital stock and operating as a single company, was legally subject to a Michigan inheritance tax. In deciding that question the Supreme Judicial Court of Massachusetts, in an opinion delivered by Chief Justice Rugg, said:

"A different situation exists as to the succession tax on the shares of stock in the Chicago and Northwestern Railway. That corporation was a single corporation so far as concerned its operation, management, stock and profits, but it owed corporate allegiance to each of the states in which it was incorporated. *Attorney General v. N. Y., N. H. & H. R. R.,* 198 Mass. 413; *Nashua and Lowell R. R. v. Boston and Lowell R. R.,* 136 U. S. 356, and cases cited. It follows that Michigan as one of the incorporating states had jurisdiction over

the corporation and could exercise power over the transfer
or succession of its stock.    That was settled for this Com-
monwealth by *Kingsbury v. Chapin,* 196 Mass. 533, in a
characteristically luminous and convincing opinion by Chief
Justice Knowlton.    There is no doubt, therefore, of the juris-
diction of Michigan over that corporation for the purpose of
imposing a succession tax on the transmission of its shares.
The rule enforced by the inferior Michigan court was to
collect a succession tax like in amount to that which could
have been enforced if the corporation had owed its existence
solely to the laws of Michigan.    It did not follow the rule
laid down in *Kingsbury v. Chapin,* 196 Mass. 533; *Matter of
Cooley,* 186 N. Y. 220, (see *Matter of Willmer,* 153 App.
Div. 804; *Matter of Thayer,* 193 N. Y. 430); *State v. Metz,*
3 Vroom 199 (32 N. J. Law), and *Gardiner v. Carter,* 74
N. H. 507, to the effect that in such cases the value of the
stock for purpose of calculating the tax should be based upon
the value of the property in the state levying the tax, and a
tax levied only on such portion of the value of each share as
is represented by property of the corporation in the taxing
state.    That appears to us to be the just and equitable view.
It is founded upon the principles of interstate comity to be
observed in the interpretation of laws which, unless so con-
strued, may afford ground for conflicting and rival claims
between the several states, and for just complaint as being
oppressive in operation. * * *"    But the opinion then pro-
ceeded to say:    "The question arises whether the principle
established by *Kingsbury v. Chapin,* 196 Mass. 533, is one of
constitutional and jurisdictional powers or simply of comity
and justice in taxation between the several states.    A succes-
sion tax is not a property tax upon the privilege of receiving
property by intestate or testate succession.    It is in the strict
sense an excise tax.    It is like a transfer and other excise
taxes.    It need not be proportional under our Constitution.
It is not subject to the restrictions and limitations which at-
tach to property taxes under the Federal Constitution.
*Knowlton v. Moore,* 178 U. S. 41; *Blackstone v. Miller,* 188
U. S. 189; *Buck v. Beach,* 206 U. S. 392, 408.    Excise or

succession taxes may be measured in part at least by the value of property which is exempt from taxation, such as government bonds, merchandise in bond, and other like tax exempt property. *Plummer v. Coler,* 178 U. S. 115; *Commonwealth v. Hamilton Co.,* 12 Allen, 298; *S. C. sub nom. Hamilton Co. v. Massachusetts,* 6 Wall. 611; *Farr Alpaca Co. v. Commonwealth,* 212 Mass. 156; *Orr v. Gilman,* 183 U. S. 278. Whether property is subject to taxation in another state or country depends upon jurisdiction. If property is subject to the jurisdiction of another taxing sovereignty, the amount of the tax which can be collected ordinarily is a matter for the decision of that sovereignty. It must be assumed because no attack is made in these respects upon the Michigan succession law that it operates equally upon all shareholders similarly situated and upon all corporations owing a like corporate allegiance and that it makes no discrimination against some in favor of others. In the absence of something to indicate inequality before the law, inevitable and general disproportion, or oppressiveness or discrimination, the amount of any particular tax is not open to inquiry in another jurisdiction. See *Gast Realty Co. v. Schneider Granite Co.,* 240 U. S. 55."

In the case of *Kingsbury v. Chapin,* to which Chief Justice Rugg referred, the court was considering the taxability, under a Massachusetts collateral inheritance tax statute, of stock held by the estate of a New Hampshire decedent in railroad corporations organized under the laws of Massachusetts and of other states through which their lines extend. In the course of the opinion delivered in that case Chief Justice Knowlton said: "We infer from the pleadings, the agreed facts and the arguments that each of these corporations is incorporated in each of the states into which its road runs; that in each case the name is the same in each state, and there is recognition by each state of the fact that the corporation is connected with the corporation of the same name in the other state, in such a way that the two, deriving their authority from two different sources, are parts of one general organization engaged in a single general enterprise, and exhibit-

ing activities and owning property in two or more states, while held in the same ownership. It is averred by the petitioners and admitted by the respondent that 'in the case of all the railroad companies there is but a single issue of capital stock representing all the property of the said companies.' In a sense, such a railroad company is a domestic corporation in each of the states where it is incorporated and owns or operates a railroad. We think that stock in such a corporation 'is property within the jurisdiction of the Commonwealth,' under the language of our statute authorizing taxation of collateral inheritance. *Rev. Laws,* c. 15, sec. 1; St. 1905, p. 481, c. 470; St. 1906, p. 453, c. 436. We think it is property within the jurisdiction of the Commonwealth in a constitutional sense, such as to enable the state to subject it to taxation as against a non-resident owner."

In the case of *Re Cooley,* 186 N. Y. 220, 10 L. R. A. (N. S.), 1010, which involved the taxation in New York of stock of the Boston and Albany Railroad Company passing under the will of a non-resident owner, the company having been formed by the consolidation of New York and Massachusetts corporations, under separate authorizations by each state, with "a single issue of capital stock representing all of the property of the consolidated and dual organization," the Court of Appeals of New York said: "By seeking the aid of our laws and becoming incorporated under them, the consolidated Boston and Albany Railroad Company became a domestic corporation. *Sage v. Lake Shore and Mich. South. R. Co.,* 70 N. Y. 220. The decedent, therefore, as the owner of Boston and Albany stock, may be regarded as holding stock in a domestic corporation; and it is so clearly settled that we need only state the proposition that capital stock in a domestic corporation, although held by a non-resident, will be regarded as having its situs where the corporation is organized, and is therefore taxable in this state. *Re Bronson,* 150 N. Y. 1."

The value, as precedents, of the cited Massachusetts and New York decisions is questioned because they are said to

be based on the theory, which was rejected by the Supreme
Court of the United States in the *Doughton* case, *supra,* that
a stockholder is the owner of the corporate property.   This
is not our understanding as to the ground of the decisions
thus challenged.   It was only in reference to a proper appor-
tionment of taxation among the concurrently incorporating
states that the relation of the stock to the property of the
corporation was considered.   A just basis of such an appor-
tionment was held to be the value of the property in each state
which the corporate stock "represented."   This did not in-
volve a decision that the holders of the stock were owners of
the corporate assets.   The right to tax was sustained on the
principle that the situs of stock held by non-residents could
be validly regarded as being in the incorporating state which
imposed the tax, although one or more other states had sim-
ultaneously given it corporate existence.   A proper limita-
tion upon the exercise of the taxing power was held to be an
assessment restricted to a valuation of the stock proportioned
to the value of the corporate property in the state asserting
the prerogative.   In the Massachusetts case of *Welch v.
Treasurer, etc., supra,* the court said: "The circumstance
that there is property of the corporation in Michigan does
not confer jurisdiction upon that state to impose a tax on
the succession to the shares of stock of the corporation.   That
property does not in any direct sense belong to the share-
holders.   The full and complete legal title to it is in the
corporation."   In the opinion delivered in the *Doughton* case,
*supra,* reference was made to the case of *Re Bronson,* 150
N. Y. 1, as one of the cases said to hold that a stockholder
owns the property of the corporation, but which, as the
Supreme Court stated, "are really authorities to the point
that shares of stock in a corporation of a state have their situs
for purposes of taxation in that state as well as in the resi-
dence of the owner of the shares."

   In our opinion the stock transfer under consideration in
this case is subject to taxation under the Pennsylvania
statute.   The situs of the stock, for taxation purposes, is in

both of the states in which the corporation issuing the stock originated. The constitutional right of Pennsylvania to tax the transfer of stock of its corporate creature is not affected by the fact that a corporation having a similar name and identical powers and property interests was organized under the laws of Maryland, and that the principal office of the dual corporate organization is maintained in Baltimore. It is a necessary incident of the issues of stock by a corporation having a double or plural state origin that its transfer is susceptible to taxation by any or all of the incorporating sovereignties. Oppressive results from the exercise of such a taxing power by two or more states, with regard to the same devolution of stock, may be obviated by the method of apportionment described and approved in the Massachusetts and New York cases to which we have referred. In so far as the transfer tax law of Pennsylvania applies to shares of stock and other property passing to lineal descendants of the deceased owner, it has no counterpart in Maryland legislation. The Pennsylvania law provides that the tax shall be payable on the clear value of the property transferred. This is the effect also of the Maryland law in regard to collateral inheritance taxes. Code, art. 81, sec. 124. But the omission of either state to provide a suitable apportionment of the value of stock which both desire to assess for the purposes of inheritance transfer taxation does not impair the authority of either to make such exactions.

The decree appealed from was passed upon the theory that the Pennsylvania tax law is invalid to the extent to which it attempts to tax the transfer of stock in the situation of that with which this case is concerned. We are unable to agree with that conclusion and must, therefore, reverse the decree, and dismiss the bill of complaint, which seeks to compel by mandatory injunction the transfer of the stock to which the suit refers, regardless of the non-payment of the Pennsylvania tax.

*Decree reversed, with costs, and bill dismissed.*