STATE OF MAINE *vs.* FIRST NATIONAL BANK OF BOSTON.

Cumberland. Opinion March 17, 1931.

124

*Clement F. Robinson,* Attorney General, for the State of Maine.
*Franklin Fisher,*
*Leonard F. Pierce,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, JJ. PHILBROOK, A. R. J.

FARRINGTON, J. This case comes up on report on an agreed statement of facts. Edward H. Haskell, a resident of Massachusetts, died testate January 8, 1924. The largest part of the property of the deceased consisted of shares of stock in the Great Northern Paper Company, a corporation organized and existing under the laws of the State of Maine. The will of the deceased was duly probated in the County of Middlesex, Massachusetts, and the above mentioned shares of stock were there subjected to an inheritance tax, of like character to the inheritance tax in Maine, and a tax thereon, amounting to $32,190.53, was paid to the Commonwealth of Massachusetts on legacies and distributive shares, in greater part made up from the proceeds of said stock. Ancillary administration having been taken out in the County of Androscoggin in this state, an inheritance tax of $62,350.41 was assessed by the Probate Court in that county on the property passing by the will of the deceased, and an appeal was taken by the executor from the assessment of this tax by the Androscoggin County Probate Court on the ground that the assessment was unconstitutional, and in violation of Article 4, Section 2, of the Constitution of the United States of America and Article 14 of the Amendments to the Constitution and that the provisions of Chap. 69, Sec. 4, of the Revised Statutes of Maine (1916) were not applied in assessing said inheritance tax because Edward H. Haskell was not a resident of the State of Maine.

After this case was, on an appeal, argued in this court and while

there pending, the parties thereto made the following agreement:

"First: That the following decree be entered in the Probate Court of Androscoggin County, —

'STATE OF MAINE

'Androscoggin, Probate Court

'Amended Decree

'Whereas, the executors of the will of the late Edward H. Haskell have appealed from the decree of this court assessing a gross inheritance tax of sixty two thousand three hundred and thirty dollars and forty one cents ($62,330.41) and,

'Whereas said appeal was pending before the Law Court for decision and determination, and

'Whereas, the State of Maine, represented by Clement F. Robinson, its Attorney General, and the executors represented by Franklin Fisher, have arrived at the following agreement, namely: that said executors be allowed a credit of thirty two thousand one hundred and ninety dollars and fifty three cents ($32,190.53) being the amount of the inheritance taxes paid by these executors to the Commonwealth of Massachusetts.

'It is therefore ordered, adjudged, and decreed that the gross tax as computed by the court in its original decree determining said inheritance tax to be sixty two thousand three hundred and thirty dollars and forty one cents ($62, 330.41) be and hereby is reduced by granting to the estate of Edward H. Haskell credit for inheritance tax paid to the Commonwealth of Massachusetts amounting to thirty two thousand one hundred and ninety dollars and fifty three cents ($32,190.53) leaving a balance of inheritance taxes assessed by the State of Maine of thirty thousand, one hundred and thirty nine dollars and eighty eight cents ($30,139.88).

'February 19th, 1930.

'B. L. Berman, Judge.'

Second: That the attorney general under the statute would bring an action of Debt for the collection of the amount of tax decreed in the amended decree of the Judge of the Probate Court of Androscoggin County.

Third: That the executors of the will of Edward H. Haskell would avail themselves of any defense possible in said action of debt.

Fourth: That an entry should be entered in the Law Court, — 'Appeal Dismissed. Settled below.' "

In accordance with this agreement the decree as quoted above was duly entered on February 19, 1930, and from that decree there has been no appeal and the decree has not been modified, reversed, annulled or satisfied.

Follbwing this the attorney general, under the statute, brought an action of debt for the collection of the tax against the executors of the estate of Edward H. Haskell, the writ being dated April 19, 1930, returnable at the May Term, 1930, of the Superior Court in Cumberland County.

The writ, service of which was accepted by the attorneys for the defendant, was duly entered in court with general appearance on the part of the defendant through its attorneys.

Under the general issue the defendant also filed a brief statement as follows:

"The inheritance tax provided for by Chapter 69 of the Revised Statutes of Maine and additions thereto and amendments thereof is an excise or duty upon the right or privilege of taking property by will or descent under the law of the State of Maine and is assessed on transfers from the dead to the living in those cases where it is by virtue of the laws of the State of Maine that the right or privilege of taking by will or descent at all exists.

"The transfer of the stock in the Great Northern Paper Company owned by Edward H. Haskell and transferred by his will is not so transferred as right or privilege of taking by will or descent by virtue of the laws of the State of Maine and it is not by virtue of the laws of this State that the right or privilege of such transfer to the Legatees at all exists. The assessment of an inheritance tax on the transfer of stock in the Great Northern Paper Company owned by Edward H. Haskell is wholly beyond the power of the State of Maine and an attempt to tax something not within the jurisdiction of the State of Maine contrary to the provisions of the Fourteenth Article of the Articles in Addition to and in Amendment of the Constitution of the United States of America.

"An assessment of an inheritance tax by the Commonwealth of Massachusetts amounting to thirty two thousand one hundred and ninety dollars and fifty three cents ($32,190.53) was paid by the executors of Edward H. Haskell. As Edward H. Haskell was domiciled in Massachusetts, the situs of his stock in the Great Northern Paper Company for inheritance tax purposes was in Massachusetts. An inheritance tax on the transfer of the stock in the Great Northern Paper Company owned by Edward H. Haskell is beyond the jurisdiction of the State of Maine and constitutes double taxation of intangible property contrary to the provisions of the Fourteenth Article of the Articles in Addition to and Amendment of the Constitution of the United States of America.

"The benefit or privilege conferred by the State of Maine in assisting in the transfer of the stock in the Great Northern Paper Company owned by Edward H. Haskell is so small compared with the tax claimed by the State of Maine that it clearly results in such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation, — to spoliation under the guise of exerting the taxing power contrary to the provisions of the Fourteenth Article of the Articles in Addition to and Amendment of the Constitution of the United States of America."

It was further agreed that substantially all of the Great Northern Paper Company's property, including its real estate and mills, are located within the borders of the State of Maine and that, as appears of record in Androscoggin County Probate Court in these proceedings, all the property of the defendant testator with respect to which the decree sued on was based consisted of shares of stock in the Great Northern Paper Company.

On the facts and pleadings as given above the case has come to this court for determination as to the liability of the defendant for the sum sued for, judgment to be entered for the plaintiff or defendant as this court may find proper.

It is the contention of the State that the decree of the Probate Court of Androscoggin County was final, no appeal or further direct proceedings having been taken in that court after entry of the decree, and that the question of unconstitutionality of the

statute, or its administration by the Probate Court, could not be raised collaterally in the statutory action of debt to collect the tax, but only in a direct proceeding. The State in any event maintains that no constitutional rights have been invaded.

We do not feel that it is necessary to discuss the claim of the state that the judgment upon which the action of debt in the instant case was brought can not be attacked collaterally, under the usual rule as to collateral attack, because of our strong conviction that the cases which are cited below as sustaining the right to tax were properly considered and decided on an entirely different basis from that on which consideration and decision were given to cases involving bonds, certificates of indebtedness, credits for cash on deposit, promissory notes, and advances to and dividends due from corporations created by the taxing state, which latter classes of cases have recently been ruled upon by the Supreme Court of the United States, as will be noted.

The contentions of the administrators of the estate are clearly and fully stated in the brief statement above quoted.

The Supreme Court of the United States in the case of the *The Farmers Loan and Trust Company* v. *Minnesota*, 280 U. S., 204, has held that negotiable bonds and certificates of indebtedness, issued by the State of Minnesota and the cities of Minneapolis and St. Paul, were not subject to an inheritance tax in the State of Minnesota, the owner having died testate, domiciled and residing in New York.

In the case of *Baldwin et al* v. *Missouri*, 281 U. S., 586, the same Court has decided that credits for cash deposited in Missouri banks, U. S. coupon bonds and certain promissory notes, largely secured by liens on Missouri lands and given by Missouri citizens, and all physically within the State of Missouri, were not subject to transfer tax in Missouri, the owner having died testate and domiciled in Illinois.

So also under the same circumstances in the case of *Beidler, II et al, Exrs.* v. *South Carolina Tax Commission*, decided by the Supreme Court of the United States on November 24, 1930, indebtedness for advances to and dividends due from a South Carolina corporation were held by the same Court as not subject to tax

in the State of South Carolina, under the laws of which the debtor corporation was organized. In this case an effort was made to sustain such a tax by South Carolina on the ground that the indebtedness had a "business situs" in that state but the court held there was insufficient or no evidence upon which such a claim could be based.

In the case of *Beidler, II et al, Exrs.* v. *South Carolina Tax Commission,* supra, the deceased testate, domiciled in Illinois at the time of his death, owned 8,000 shares of stock in the Santee River Cypress Lumber Company, the same corporation against whose indebtedness to the deceased the tax in question was imposed. Payment of the succession tax to South Carolina with respect to the shares of stock was made without any question being raised as to its validity. The Court in the opinion says, "The interest of the decedent as a stockholder was a distinct interest, and the estate of the decedent has been taxed by South Carolina upon the transfer of his stock according to its agreed value."

Recognizing and being necessarily bound by the three foregoing decisions, as far as they relate to the classes of property therein involved, we feel that the rule there applied does not, and should not, in the case before us, control as to a tax on shares of stock in a corporation organized under the laws of the taxing state and owned by a non-resident decedent.

*Farmers' Loan and Trust Company* v. *Minnesota,* supra, denies the right to impose a succession tax on bonds and certificates of indebtedness, and *Baldwin et al* v. *Missouri* follows *Farmers' Loan and Trust Company* v. *Minnesota* as to the right to tax bank deposits, coupon bonds and promissory notes, but those cases and the case of *Beidler, II et al* v. *South Carolina Tax Commission,* supra, which denies the right to tax advances and dividends, do not stand for, and we do not believe they were intended to stand for, the proposition that the state in which a corporation is organized can not impose a tax on the transfer of the shares of stock in such a corporation owned by such non-resident decedent.

Jurisdiction for the purpose of imposing a succession tax exists when the exercise of some essential privilege incident to the transfer of the title depends for its legality upon the law of the state

levying the tax. *Welch et al, Admr.* v. *Treasurer and Receiver General*, 223 Mass., 87 ; *Walker, Admr.* v. *Treasurer and Receiver General*, 221 Mass., 600, 602.

Shares of stock in a corporation organized under the laws of the state levying the tax and belonging to a non-resident decedent are property within the jurisdiction of the taxing state and there subject to an inheritance tax. *Bliss et als* v. *Bliss et als*, 221 Mass., 201, citing *Greves, Exr.* v. *Shaw et als*, 173 Mass., 205. See also *Moody, Exr. et als* v. *Shaw*, 173 Mass., 375; *Kingsbury et als, Exrs.* v. *Chapin*, 196 Mass., 535; *Welch et al, Admr.*, and *Walker, Admr.* v. *Treasurer and Receiver General*, both supra.

The statutory provisions in Massachusetts were, with unimportant variation of language, identical with those of Sec. 1 of Chap. 69, R. S. of Maine (1916), as amended and in force at the death of the testator in the instant case, which were as follows, "All property within the jurisdiction of this State, and any interest therein whether belonging to inhabitants of this State or not, and whether tangible or intangible, which shall pass by will, by the intestate laws of this state, . . . shall be subject to an inheritance tax for the use of the State . . . ." And in the cases cited below the provisions of law relating to the imposition of inheritance taxes, as far as the principle involved is concerned, were essentially the same.

In *State ex rel Graff et al* v. *Probate Court of St. Louis Co.* (Minn.), 150 N. W., 1094, the Court says, "It is usually true that the right to succeed to the ownership of the personal property of a decedent is governed by the law of the domicil of the decedent, and is subject to taxation at the place of such domicil; yet, if the one who succeeds to such ownership must invoke the law of another state before he can reduce such property to possession, or secure the beneficial enjoyment thereof, it is generally, although not universally, held that such other state also has power to exact a tax upon the privilege of taking over and securing the beneficial enjoyment of such property."

Other cases holding that shares of stock in corporations organized under the laws of the taxing state are subject to the tax in the case of non-resident decedent owners are, *Douglas County* v.

*Kountze*, 84 Neb., 506, 121 N. W., 593, in which the Court says, "The complete devolution of said title must take place under the protection, and according to the laws of Nebraska, and that suc-cession is subject to the inheritance tax"; *McDougald, Co. Treas., Applt.* v. *Lilienthal et al* (Cal.), 164 Pac., 387, L. R. A., 1917 F, 267; *In re Bronson*, 150 N. Y., 1, 34 L. R. A., 238, re-affirmed in the case of *In re Palmer*, 183 N. Y., 238; the principle is also recognized in *Gardiner et al, Exrs.* v. *Carter, State Treasurer*, 74 N. H., 507; *Commonwealth* v. *Taylor's Executor* (Pa.), 147 At., 71; *Northern Central Railway Co., Applt.* v. *Fidelity Trust Co. et al, Exrs.*, 152 Md., 94, 136 Atl., 66; *In re Culver's Estate, State Treasurer* v. *Gould*, 145 Iowa, 1, 123 N. W., 743, in which the Court says, "It is a general and familiar rule that a corporation is under the jurisdiction and control of the state of its domicile. The State directs the manner and form of its organization. It exercises supervisory power over it during its existence, and finally directs the manner of its dissolution." *Carr* v. *Edwards* (N. J.), 87 Atl., 132; *Security Trust Co.* v. *Edwards* (N. J.), 101 Atl., 384, and cases cited.

In the case of *Neilson et al* v. *Russell et al*, 69 Atl., 476, an earlier New Jersey case reversed on another point and quoted with approval in *Carr* v. *Edwards, Comptroller*, supra, the Court says, "In this country, where the general doctrine of the State Courts is that the situs of property governs its liability to succession taxes, the weight of authority is that stock in a corporation is subject to the imposition of succession taxes by the State that created the corporation, and that in this regard the place of residence of the deceased stockholder is immaterial" and "the whereabouts of the certificates of stock is immaterial upon the question of the legal situs of the property represented by them."

The principle is also recognized in *Commonwealth et al* v. *Hunt-ington et al*, 148 Va., 97, 138 S. E., 650, in which the Court says, "The tax here involved, being a transfer tax, is in its nature a privilege tax as distinguished from a tax upon property. Such a tax can be fairly justified only in consideration of some privilege accorded by the state, and if there is no such privilege accorded, the state can impose no tax. If there is a complete devolution of

title consummated by law, outside of the territorial jurisdiction of Virginia, without the necessity either of invoking any of its laws, or the judicial, or official machinery of the State, or the performance of any act by some person in Virginia, there is no basis for such a tax." . . . "The transfer of shares of stock in Virginia corporations owned by non-resident decedents is subject to the transfer tax because all such transfers are within the jurisdiction of the State. In order to be subject to the tax, as within the jurisdiction of the State, there must be some act of transfer, payment, or delivery, to be done or performed under the authority of the Virginia law." In this case no question was raised as to the validity of the tax on the stock and the court clearly recognizes the principle permitting such tax. Right to tax bonds of the non-resident decedent was denied on the ground that their transfer required no act to be done or performed by anyone in Virginia or within its jurisdiction.

The Statutes of Maine in force at the date of the testator's death in the present case provided, R. S. 1916, Chap. 51, Sec. 36, as amended by Chap. 49, P. L. 1919, as follows:

"Sec. 36. When the capital of a corporation is divided into shares, and certificates thereof are issued, they may be transferred by indorsement and delivery. The delivery of a certificate of stock of a corporation to a bona fide purchaser or pledgee for value, together with a written transfer of the same or a written power of attorney to sell, assign and transfer the same, signed by the owner of the certificate, shall be a sufficient delivery to transfer the title against all parties. Certificates of shares with the seal of the corporation affixed, shall be issued to those entitled to them by transfer or otherwise, signed by such officer or officers as the by-laws shall prescribe. Such officer or officers shall not sign blank certificates, nor sign certificates without knowledge of the apparent title of the persons to whom they are issued, unless the corporation has a duly authorized transfer agent whose duty it is to countersign each certificate issued. In case of the absence or disability of either of the officers authorized by the by-laws to issue shares by transfer or otherwise, the signatures of a majority of the directors in his stead shall be sufficient."

They also provided, R. S. 1916, Chap. 51, Sec. 37, as follows:

"Sec. 37. No transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation or a new certificate is issued to the person to whom it has been so transferred."

Secs. 25 and 26 of Chap. 69, R. S. 1916, in force at the date of the testator's death in the instant case, provided as follows:

"Sec. 25. If a foreign executor, administrator or trustee assigns or transfers any stock in any national bank located in this state or in any corporation organized under the laws of this state, owned by a deceased non-resident at the date of his death and liable to a tax under the provisions of this chapter, the tax shall be paid to the attorney-general at the time of such assignment or transfer; and if it is' not paid when due, such executor, administrator or trustee shall be personally liable therefor until it is paid. Subject to the provisions of said section a bank located in this state or a corporation organized under the laws of this state which shall record a transfer of any share of its stock made by a foreign executor, administrator or trustee, or issue a new certificate for a share of its stock at the instance of a foreign executor, administrator or trustee before all taxes imposed thereon by the provisions of this chapter have been paid, shall be liable for such tax in an action of debt brought by the attorney-general."

"Sec. 26. No person or corporation shall deliver or transfer any securities or assets belonging to the estate of a non-resident decedent to anyone unless authority to receive the same shall have been given by a probate court of this state, upon satisfactory evidence that all inheritance taxes provided for by this chapter have been paid, guaranteed or secured as hereinbefore provided. Any person or corporation that delivers or transfers any securities or assets in violation of the provisions of this section shall be liable for such tax in an action of debt brought by the attorney-general."

The foregoing statutory provisions state the law relating to transfers of stock generally and to stock held by non-resident decedents, and indicate the necessity of acts of transfer, payment and delivery to be done and performed under the authority of the

Maine law. They indicate and constitute a privilege accorded by the State of Maine and without that privilege there can be no complete devolution of title to the shares of stock involved in this case and the laws of Maine must of necessity be invoked.

In *Rhode Island Hospital Trust Co., Exr.* v. *Doughton*, 270 U. S., 69, Chief Justice Taft said, "In the matter of intangibles, like choses in action, shares of stock, and bonds, the situs of which is with the owner, a transfer tax of course may properly be levied by the State in which he resides. So, too, it is well established that the State in which a corporation is organized may provide in creating it for the taxation in that State of all its shares, whether owned by residents or non-residents."

If the state under whose laws the corporation comes into being has power and jurisdiction to levy a property tax on the shares of stock of that corporation, regardless of the residence of the owner of those shares, it is difficult to see any logical reason why it has not power and jurisdiction to subject those same shares to an inheritance tax whether owned by resident or non-resident decedents.

In *Jellenik* v. *Huron Copper Company*, 177 U. S., 1, it was held that shares of stock in a corporation had a situs in the state creating the corporation so that they were there subject to mesne process.

Believing that it is in accord with the overwhelming weight of authority indicated by the cases herein cited, we hold in the instant case that the shares of stock in the Great Northern Paper Company, a corporation organized and existing by virtue of the laws of this state imposing the tax, are within its jurisdiction and there subject to an inheritance tax even though the owner was a non-resident decedent, regardless of whether the certificates of stock were at the time of the death in the state of the domicile or in the taxing state, and that such a tax does not violate any provision of the Fourteenth Amendment.

*Judgment for the State of Maine for $30,139.88, with interest from February 19, 1930.*