### MOSES et al. v. READ et al.
#### No. 4963.

Circuit Court of Appeals, Third Circuit.
Jan. 25, 1933.

Moses & Singer, of New York City (Felix A. Fishman and Herman G. Kopald, both of New York City, of counsel), for appellants.

William A. Stevens, Atty. Gen. (William A. Moore, of Trenton, N. J., of counsel), for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

When Henry P. Goldschmidt died he held shares of stock in New Jersey corporations. On these shares his executors paid inheritance taxes to New York, the state of his domicile and of the taxable situs of the shares. Later, and at different times, they paid additional death transfer taxes on the same stocks to the defendant tax collectors in order to obtain waivers from the State of New Jersey which were necessary to enable them to sell and effect transfers of the shares. Years passed and nothing happened until, shortly after the institution of a like suit between other parties in Maine, the executors of Goldschmidt brought this suit against the tax collectors personally to recover the taxes they had paid because unlawfully assessed and collected under the New Jersey statute in contravention of the due process clause of the Fourteenth Amendment to the Constitution. It now appears that when this case was pending in the District Court, the Maine case, involving the same question, was pending in the Supreme Court and that, by the decision in that case, to the effect that jurisdiction to impose death transfer taxes upon shares of stock, like other intangibles, is, save in exceptional circumstances, confined to the state of the owner's domicile, the plaintiffs' contention as to the unlawful assessment and collection of the taxes here in question was sustained. First National Bank of Boston v. State of Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313; Id., 130 Me. 123, 154 A. 103, 104. Nevertheless the court dismissed the complaint. The plaintiffs appealed.

The trouble in this case arose from the fact that the plaintiffs, either knowing their rights or having no thought about them, did not disclose their position on the constitutionality of the New Jersey Transfer Tax Act (4 Comp. St. N. J. 1910, p. 5301, § 537 et seq. and Comp. St. Supp. N. J. § 208—537 et seq.), as applied to the decedent's estate and sustained by the cited decision, until they brought this suit within two days of the end of the six year period provided by the Statute of Limitations and nearly six years

after they had paid the taxes without protest and after the defendant collectors had turned the money into the state treasury. 4 Comp. Stat. of New Jersey 1910, p. 4959, § 106.

■■ Passing by the question of personal liability of the defendant tax collectors in such an action, the case is reduced to a few closely related, yet separable, questions. The first, as presented, is whether protest is a condition precedent to recovery of taxes illegally exacted. The question is too broadly stated to admit of a short answer. Though under general law and by force of statutes it is a condition precedent in some cases, it is not in others. As a protest is evidence that a payment is involuntary, Barney v. Rickard, 157 U. S. 352, 355, 15 S. Ct. 642, 39 L. Ed. 730, we think failure to protest figures in this case principally as evidence to denote (and thereby to enable the court to decide) that the tax payments in question were voluntary. If so, they cannot, under the general rule, be recovered. Chesebrough v. United States, 192 U. S. 253, 259, 24 S. Ct. 262, 48 L. Ed. 432; Philadelphia v. The Collector, 5 Wall. (72 U. S.) 720, 732, 18 L. Ed. 614; Semple & Co. v. Lewellyn (D. C.) 1 F.(2d) 745, 748; Atchison, etc., R. Co. v. O'Connor, 223 U. S. 280, 285, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Wourdack v. Becker (C. C. A.) 55 F.(2d) 840, 842; 3 Cooley Taxation (4th Ed.) 2569.

As the complaint contains no averment of protest made by the plaintiffs when they paid the taxes, we shall assume that none was made and, were there nothing else in the case, we should decide the payments were voluntary and not to be recovered. The plaintiffs concede the lack of protest but contend that, even so, the payments were not voluntary but in fact involuntary because compelled by the necessity of the testamentary administration to have the shares transferred, and coerced by the consequences of nonpayment—placing of lien, charging interest, providing for bond and forbidding local corporations before taxes are paid to make transfers of shares— which amount to penalties imposed by the statute. In a word, they say they paid the taxes under duress and that payment under duress makes protest unnecessary. International Paper Co. v. Burrill (D. C.) 260 F. 664, 666.

Thus, finally, the case resolves itself into the single question: "Were the taxes paid under duress imposed by the statute?"

■ For the affirmative of this question the plaintiffs point to the exercise of free will to do a thing, or its suppression, as an element always entering into questions of duress and rely, for instances of duress, upon City of Chicago v. Klinkert, 94 Ill. App. 524; Atchison, etc., R. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510; Swift C. & B. Co. v. United States, 111 U. S. 22, 4 S. Ct. 244, 28 L. Ed. 341; Cook County v. Fairbanks, 222 Ill. 578, 78 N. E. 895; Mcarkle v. County of Hennepin, 44 Minn. 546, 47 N. W. 165. But they recognize, as in our study we had found to be the fact, that in certain, if not in all of the cases cited, the taxpayers had filed protests. It follows that these authorities do not rule the instant case and are useful only for expressions in the opinions on the law of duress. But the penalties imposed by the New Jersey statute in the form of consequences to be suffered by the taxable for the non-payment of taxes do not amount to duress. Like all tax statutes, the one in question demands payment of taxes and provides a way to collect them. Neither the demand nor the consequences of disobedience amount to compulsion to pay taxes under redress. They may be paid under protest and, if unlawfully collected, can be recovered. This is the taxpayer's way out. But if, with this adequate remedy at hand, the taxpayer, as here, voluntarily goes to the tax collector with knowledge of his rights, actual or chargeable, and without protest pays taxes because commanded, or is moved to pay them to avoid difficulties in the administration of an estate, the provisions of the statute are not coercive and do not constitute duress. The case is distinguished from cases where taxes, wrongfully assessed, are paid under threats of execution, distress, loss of business, or to avoid other irreparable injury. Any other view would, in effect, render payment of practically all taxes involuntary and subject to be recovered, Security National Bank v. Young (C. C. A.) 55 F.(2d) 616; Phillips v. City of Portsmouth, 115 Va. 120, 78 S. E. 651, 655; Elliott v. Swartwout, 10 Pet. (35 U. S.) 137, 9 L. Ed. 373; Gulbenkian v. United States (C. C.) 175 F. 860; Fox v. Edwards (C. C. A.) 287 F. 669, 671; Detroit Edison Co. v. Wyatt Coal Co. (C. C. A.) 293 F. 489, 493; and to be recovered by suit against a tax collector who, having received payment without protest by the taxpayer, has, in complete ignorance of any claim, secretly or silently withheld, turned the money without warning into the state treasury. El-

liott v. Swartwout, 10 Pet. (35 U. S.) 137, 153, 154, 158, 9 L. Ed. 373; Cary v. Curtis, 3 How. (44 U. S.) 236, 240, 255, 261, 11 L. Ed. 576; International Paper Co. v. Burrill (D. C.) 260 F. 664, 666.

The judgment dismissing the complaint is affirmed.