## TRAMMELL v. BRADLEY, COUNTY JUDGE.

1. LEGISLATURE: *Resolution extending session of 1881.*
   The resolution of the Legislature extending the session of 1881, did not require the approval of the Governor. It was constitutional without such approval.

2. LIQUOR: *Local option act of 1881, constitutional.*
   The Act of 1881, authorizing the County Courts to make an order prohibiting the sale or giving away of liquor within three miles of any church or school house, upon the petition of a majority of the adult residents in said limit, is constitutional and valid.

APPEAL from *Pope* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

Trammell v. Bradley, County Judge.

*Henderson & Caruth* and *J. Erb*, for appellant:

The Act of March 2nd, 1875, differs in several very important features from the Act of March 21st, 1881. The former was "An Act *to prevent* the sale * * * of liquors, etc." The latter, "An act providing for the prohibition of the sale * * * of liquors," etc. In the former the Legislature declared that the sale of spiritous liquors should be prohibited; but in the latter, it only declared, in its title, that it provided the means for the prohibition of the sale, etc., of liquors, and in its first section, that whenever the adults *shall desire to prohibit the sale*, etc., they may obtain an order, etc.

The latter Act is unconstitutional, because of the delegation of legislative power to the adult residents within certain limits.

*Sammert* v. *Tidwell*, 62 *Mo.*, 188 ; *Ex parte, Wall.* 48, *Cal.*, 279 ; *State* v. *Wilcox*, 45 *Mo.*, 458 ; *Bank of Chenango*, 26 *N. Y.*, 470 ; *State* v. *Swisher*, 17 *Tex.*, 441 ; *Barto* v. 8 *N. Y.*, 490 ; *Cooley Con. Lim.*, 146–7 ; *State* v. *Reynolds*, 5 *Gilm.* 1 ; *State* v. *McNeil*, 24 *Wis.*, 149 ; *Response to House Resolution*, 55 *Mo.*, 295 ; *People* v. *Nally*, 49 *Col.*, 478 ; *Pike County* v. *Barnes*, 51 *Miss.*, 305 ; *Call* v. *Chadburn*, 46 *Me.*, 206 ; *Brunswick* v. *Finney*, 54 *Ga.*, 317.

2. The Act of 1881 does not attempt to repeal the Act of March 8th, 1879, but there is a clear repugnance and irreconcilable conflict between the two. The latter Act directs that the question of license or no license shall be submitted to the *electors* of the several townships, etc. If a majority vote for license, licenses may issue, etc. Within the same locality, by the former Act, a new element of political power (aliens, females, idiots, etc.), is added, and authority conferred upon them, to prohibit the sale, etc., of liquors, thus nullifying the will of the electors at the former election.

Trammell v. Bradley, County Judge.

The two laws occupy the same space, at the same time and are so opposed that one or the other must fall. The elective franchise can be exercised by males of sound mind alone, *Sec.* 1, *Art. 3, Const.*, and if the Act had authorized females, idiots, aliens and insane persons to vote by ballot, the act would certainly be void. The signature to the petition is the substance of a ballot, in taking the sense of the community, and it follows that the elective franchise has been extended beyond the limits of the Constitution and the Act is void. *Starin* v. *Genoa*, 23 *N. Y.*, 441; *Gould* v. *Sterling*, 23 *N. Y.*, and the dissenting opinion of TARBELL, J., in *Rohrbacker* v. *City of Jackson*, 51 *Miss.*, 730.

3. The effect of the Act of 1881 is to repeal or displace the Act of 1879, in the localities mentioned. The electors, much less the whole body of the population, by vote or petition cannot repeal a Statute or amend it. This can only be be done by the Legislature. *State* v. *Weir*, 33 *Iowa*, 134; *Ex parte Wall*, 48 *Cal.*, 279; *Lammert* v. *Lidwal*, 62 *Mo.*, 188.

4. It is void for uncertainty as to county lines, and because it confers extra territorial jurisdiction on County Courts, where the edifice is within three miles of county lines.

*C. B. Moore, Attorney-General*, for the appellee:

The Act is constitutional. *Locke's Appeal*, 72 *Penn.*, 72; *Rohrbacker* v. *City of Jackson*, 51 *Miss.*, 735; *Cooley's Con. Lim.*, 151–2, and cases cited in note, 2 *p.*, 152.

The Act is similar to the Act of 1875, which has been held constitutional. *Bryant* v. *Boyd*, 35 *Ark.*, 69; *Wilson* v. *State*, *Ib.*, 414; *Blackwell* v. *State*, 36 *Ark.*, 178.

The whole matter is "within the Constitutional control of the Legislature, *as a police regulation.*" *Whittington Ex parte*, 34 *Ark.*, 394.

Trammell v. Bradley, County Judge.

STATEMENT.

EAKIN, J. The relator, Trammell, on the twelfth day of July, 1881, applied by petition to the County Court for license, under the Act of March 8, 1879, to keep a dram-shop, or drinking-saloon, in the town of Atkins, in Wilson township, Pope county, which was refused,

He shows in his relation, which was immediately made to the Circuit Court, that the question had been previously submitted, as required by law, to the qualified electors of said township, and that a majority had voted in favor of the granting of such licenses, for the term of two years, succeeding said election ; that he had accompanied his petition to the County Court with a proper receipt in full of the collector, for the commissions and fees due and charge-able on such licenses for State and county revenue, and had tendered a proper bond, as required by law, with all which the County Court was thoroughly satisfied, and so caused its record to say.

And he relates that his petition was rejected by the County Court solely because, at the same term, another petition had been presented by persons claiming to be a majority of the "adult inhabitants residing within three miles" of a certain church and academy in the town of Atkins, praying that the sale or giving away of any alcoholic, vinous, spirituous, or intoxicating liquors, etc., be forbidden within said area of three miles ; which petition had been presented under a pretended act of the Legislature, approved March 21, 1881, and in accordance with which the County Court had made an order as prayed.

He states that the County Court had decided that he is a proper person to receive the license he asks, and that he had fully complied with all the requirements of the Statute, but conceives itself precluded from granting the license by

Trammell v. Bradley, County Judge.

the said prohibitory order, made on petition of the majority of the adult inhabitants.

The relator submits that said Act of March 21, 1881, is invalid, because the session of the General Assembly was, by force of the Constitution (Art. V., Sec. 17), adjourned on the ninth day of March, 1881, at 12 M., and that a concurrent resolution, extending the session for ten days beyond that time, was never approved by the Governor; and that said act was not passed previous to said ninth day of March.

Moreover, that said act of March 21, is otherwise in conflict with the Constitution of the State, and of the United States.

The prayer is for a writ of mandamus, to compel the County Court to grant the relator a license. To this relation a demurrer was sustained, and the relator appeals.

### OPINION.

The attorneys for the County Court make no point here of the propriety of the writ of mandamus to control the direction of the County Court, in case the Act of March 21, 1881, should be held unconstitutional, but desire the constitutionality of that act to be tested. In deference to the attorneys in the case, and in view of the grave public interests involved in the question, this court consents to waive that point, although directly presented by the demurrer, and to determine the validity of that act.

1. LEGIS-
LATURE:
Resolu-
tion ex-
tending
session of
1881, con-
stitutional

It was approved on the twenty-first of March, 1881. The regular biennial session of the Legislature had begun on the tenth of January. During the session, by concurrent resolution, not signed by the Governor, the session "was extended and continued" until 12 o'clock M. on the nineteenth of March, 1881. The session, *if not properly extended,*

expired on the ninth of March, and the act, having been passed after that period, would be invalid.

The clauses of the Constitution touching this point are as follows: .

By Art. V., Sec. 17: "The regular biennial sessions shall not exceed sixty days in duration, unless by a vote of two-thirds of the members elected to each house of said General Assembly." By Art. VI., Sec. 16: "Every order or resolution in which the concurrence of both houses of the General Assembly may be necessary, *except on questions of adjournment*, shall be presented to the Governor, and before it shall take effect be approved by him," or, as in case of bills, be returned, etc.

Is the matter of the concurrent resolution a question of adjournment, as contemplated by the Constitution? "An adjournment," says Mr. Blackstone, "is no more than a continuance of the session from one day to another, as the word itself signifies." The concurrent resolution had for its sole object the continuance of the session from the ninth of March, 1881, when it would have otherwise expired, till the nineteenth of the same month. This is clearly germain to the matter of adjournment, and the resolution did not require the approval of the Governor. This was the construction put upon the Constitution by the legislative department, in a matter regulating its proceedings, and also by the Executive. The Governor approved many bills passed during the time of extension, which he could not have done had he supposed his approval of the concurrent resolution to be necessary. The act is not subject to constitutional objection, on account of the time of its passage.

It is more urgently pressed upon the court that the act is in violation of Section 1 of Article V. of the Constitution, which vests all the legislative power of the State in the Senate and House of Representatives; and also of Section 1

2. LIQUOR: Local option Act of 1881. constitutional

of Article III., defining the qualifications of electors; which, for the purposes of this opinon, it is sufficient to say, do not embrace all "adult inhabitants." This requires a closer scrutiny of the act, in connection with previous legislation, and the law existing at the time of its passage.

There were numerous special laws forbidding the sale of intoxicating liquors in special localities. Retaining all these intact, the Legislature, on the second of March, 1875, passed a general law, making it unlawful for any person to sell, or give away, any liquors (describing them) within three miles of any academy, college, or university, in the State, outside of cities of the first and second class. Section 4, however, so far neutralized the general prohibition as to require some action on the part of the *adult residents* of the *township*, in order to give efficacy to the Act, in any particular locality. It was required that a majority of them should petition the County Court for the purpose, showing the existence of the institution in the township, and that pupils were taught there; and praying that the sale, or giving away of spirituous liquors be prohibited within three miles of the same. The County Court was required, on becoming satisfied as to the facts, to make an order in accordance with said prayer. The Act provides that "from thenceforth" it shall not be lawful to vend, or give away, any spirituous liquors within the limits aforesaid. There were other provisions, not important in this connection. (See the Act, on p. 206 of Pamph. Acts of 1874–5; and, also, set forth at large in *Boyd* v. *Bryant*, 35 *Ark.*, *p.* 70.) The constitutionality of this Act came before this Court in the case just quoted, and it was, upon careful consideration, sustained. All the objections were answered, in the careful opinion delivered by CHIEF JUSTICE ENGLISH, who sustained it, as one of that class of local option laws which it was within the

power of the Legislature to pass. It can serve no useful purpose to repeat the views therein expressed. The case expresses the deliberate position taken by this Court in the matter of local laws. That position is in line with those courts which hold, upon this vexed question, that local option laws are not delegations, in any true sense, of legislative power, but derive their whole efficacy from the legislative will. That they are made operative, or not, in particular localities, upon certain contingencies, or under certain circumstances, which are referred to the County Court for determination; but, when set in operation, they derive their vigor from the original legislative life infused into them as general laws of the land. It must be confessed that the question was not, originally, without very grave difficulties; but now, upon a review of them all, and weighing the dangers and inconveniences of each side, this Court adheres to the views there taken. And this, we think, is sustained by the weight of authority, as well as of reason.

What is good for one locality, under certain circumstances, may not always be good for another, under different circumstances. General laws of an adjustable nature, become a necessity. The purposes of good government cannot be fully subserved without them, and their certainty is not impaired by their adjustable nature.

The counties are governmental agencies—the Briarean arms of the sovereign power; and, through the County Courts, the operations of general police regulations may be best adapted to circumstances. The Constitution has invested them, under legislative direction, with the exclusive original jurisdiction of all matters connected with the internal improvement and local concerns of their respective counties. It seems to harmonize with that, to make them the proper tribunals, under fixed laws, to ascertain and

declare the facts and circumstances under which certain police laws are to operate, as depending upon the knowledge, by the inhabitants of special localities, of their best interests, and the expression of their desires. What may, in some localities, be a great evil, may, in others, be a convenience or a necessity.

The same act came again to be discussed by this Court, in the case of *Wilson* v. *The State,* 35 *Ark.,* 414. Although there was, in that case, a dissenting opinion, as to the construction and effect of the Act, no member of the Court made any question, or had a doubt of its validity.

Again, in *Blackwell* v. *State,* 36 *Ark.,* 178, the constitutionality of the Act of 1875 was called in question, and this Court, adhering to the former decisions, sustained the Act.

Meanwhile, under other general acts of the General Assembly, the sale of liquors without license had, at all times, been prohibited throughout the State. The laws, from time to time, had been changed, but the policy of regulating the retail of liquors and the keeping of dram shops had been persistently maintained; so that no time occurs to the mind of the Court, since an early period in the history of our State, when it has not been a misdemeanor to retail liquor, as a business, or keep a drinking saloon, without license.

The last General Act upon that subject, and the one in force when this Act of 1881, now in question, was passed, is that of March 8, 1879. The first section is sweeping, and, with a saving for manufacturers, makes it unlawful for any person to sell liquors, of a certain description, without license, under a very severe penalty. The mode of procuring license is pointed out, and, in this connection, it is provided that, at each general State election, it shall be submitted to the *qualified electors* of each township and city ward,

whether or not *any* license shall be granted by the County Court to keep a dram shop or drinking saloon in that township or ward, for the next two years. If the vote be for license, then, and not otherwise, "it shall be lawful for the County Court" to grant it.

Such, in effect, was the state of the law, as settled by judicial decisions, when the Act of March 21, 1881, was passed, the validity of which is the matter now in judgment. (See Pamph. Acts of 1881, p. 140.)

It begins with no sweeping section, declaring it unlawful for any person to sell, or give away, liquors within three miles of any academy, etc. This was unnecessary, as the act was passed with reference to existing laws; and such a section, even in the former Act of 1875, was only formal and insignificant. Because, by the fourth section of the last named Act, the law was to be, with regard to each township, entirely dormant, until the County Court, upon the petition of a majority of the adult residents of the township in which the academy, etc., was situated, should make an order in accordance with the prayer, prohibiting the sale within three miles of the institution. That Act and this are, in this aspect, precisely the same, in effect.

The Act of 1881 made a slight change in the policy. It did not require for the petition a majority of the "adult residents of the township but a majority of the *inhabitants residing within* three miles of the named institution. There does not seem to be any other difference in the Acts, which can affect the question of their constitutionality.

Counsel for relator, conceding the force and binding obligations upon this Court, of its decisions rendered upon the Act of 1875, contend that a new question may be opened upon the construction of the Act of 1881, and press the point that the latter Act attempts to confer legislative powers

upon local bodies, unknown to the Constitution either as organizations, or individually as qualified electors.

To what has already been said in former decisions and in this, it may be added : That it would be a matter sadly to be regretted, if the legislative power were so trammeled by the constitution that it would not, whilst affording to the citizens, everywhere, all the comforts and conveniences supposed to exist in a well regulated liquor traffic, at the same time protect the youth of the country, assembled at a tender age at these institutions of learning, from the temptations to a vice which has strewn the surface of the earth with wrecks of noble natures.    The family, society, and civil government are all deeply concerned in this question, and whilst the civil liberties protected by the constitution are the highest *par excellance*, overriding all other considerations, the constitution should be very clear to prevent the legislature from any well-devised tentative efforts to so adjust its laws as to allow a fair liberty to the citizens, with a saving of such cases as, under surrounding circumstances, would make the danger of the privilege greater than any benefits would compensate.

This, in its various legislation upon this subject, the general assembly has attempted to do, not by delegating law-making powers to the County Courts or to bodies of men in localities ; but by enabling those courts, having by the constitution the charge, under legislative direction, of the local concerns of their territory and people, to determine upon proper and prescribed information, the localities within which the provisions of the general license law would be dangerous to the morals, or repugnant to the feelings of the inhabitants, and making it obligatory upon them to refuse a license upon such determination.    This does not constitute legislation.    The courts are not empowered to order anything positive.    They act only by negation.    They

only interpose a shield to protect those localities which the legislative power has defined as proper for protection, by a law general and uniform over the state ; and in doing this they follow the modes marked out by the law itself, which modes are also applicable everywhere. This is not the exercise of legislative power. It is the use of agencies by the legislature to direct and adjust the operation of its laws uniformly, under like circumstances, all over the State. The laws operate by their own vigor, and are as valid at the beginning as, at law, a conveyance would be, with•shifting and springing uses, conditional limitations and contingent remainders.

The mode of information prescribed for townships is by vote of electors at a general election. We understand that no objection is made to that. With regard to institutions of learning, the court derives its information from the expressed wishes of a majority of the adult inhabitants residing within three miles. If the petitioners made the law for the district, or were required to express their views and feel-. ings at the regular legal polls, it would be fatal that females. and others, not qualified electors, might participate. But. considered simply as a condition upon which the County- Court must decline to issue license, and as a prescribed means. of information, the provision for the voice of women is neither· unreasonable nor unconstitutional. They are not beings. wholly ignored by the constitution and the laws, and there is much reason to believe that their womanly instincts and keen foresight of demoralizing influences are truer than the often careless judgment of electors. It is undoubted everywhere that men and children are safest under the moral influences and social surroundings which are approved by° women.

That trouble may arise in giving effect to an act where the institution is so near a county line that the surrounding

25—37

area of three miles would enter two or more counties, is simply a question of practice. Of course the courts would refrain from any construction giving the act an unconstitutional effect, but that would not affect its legitimate operation in cases like this where the difficulty does not occur. It is not advisable to make any construction by anticipation. Perhaps some additional act may solve the difficulty. Few systems are launched perfect, but the defects revealed by experiment may be supplied. The court concludes that there is no difference in principle between the acts of 1875 and 1881, and adheres to its decisions upon the former. The act of 1881 is valid, and the circuit court did not err in sustaining the demurrer to the petition for a mandamus, and refusing the writ.

Affirmed.