GATES *v.* BANK OF COMMERCE & TRUST COMPANY.

Opinion delivered June 29, 1931.

*Hal L. Norwood,* Attorney General, *Walter L. Pope,* Assistant, *David A. Gates,* and *George Vaughan,* for appellant.

*John F. Park* and *Bridges, McGaughy & Bridges,* for appellee.

HART, C. J., (after stating the facts). It is the settled law that inheritance taxes are not levied upon property, but upon the privilege or right of succession to it. *State* v. *Handlin,* 100 Ark. 175, 139 S. W. 1112; *McDaniel* v. *Byrkett,* 120 Ark. 295, 179 S. W. 491; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 46 S. Ct. 256; and *Blodgett* v. *Silberman,* 277 U. S. 1, 48 S. Ct. 410.

These cases sustain the principle that, while an inheritance tax is not upon property but upon the right of succession to property, yet the principle is that the subject to be taxed must be within the jurisdiction of the State, as well in the case of a transfer tax as in that of a property tax. The reason is that the State has no power to tax the devolution of the property of a nonresident unless it has jurisdiction of the property devolved or transferred.

It is conceded by the parties that a right to a refund of the tax depends upon the validity of subdivision C of § 10,218 of Crawford & Moses' Digest. The subsection provides for an inheritance tax upon the transfer of shares of stock of all corporations organized and existing under the laws of the State, certificates of which shares of stock shall be within or without the State.

Counsel for appellee seek to uphold the judgment of the circuit court upon the rule or maxim, *Mobilia sequunter personam,* as applied by the Supreme Court of the United States in several recent cases. In the *Farmers' Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 50 S. Ct. 98, it was held that negotiable bonds and certificates

issued by the State and certain municipal corporations of Minnesota were not subject to an inheritance tax in the State of Minnesota, the owner having died testate and residing in the State of New York. The court applied the rule, *Mobilia sequuuter personam*, and treated the bonds and certificates of indebtedness as localized at the creditor's domicile for taxation purposes. Consequently, it was held that their situs for taxation being in another. State, they were taxable there, and not in the State of Minnesota where they were issued. The court proceeded upon the theory that the bonds and certificates of indebtedness were only evidence of the debts; and, when carried by the owner to another State, their situs as debts took the domicile of the owner, and that their testamentary transfer might be taxed only in the State where they were found. The reason was that their legal situs as debts was at the creditor's domicile, and they were taxable as property there. The logical result was that the taxation upon the right of succession to the property must be laid in the State where the owner of the property resided at the time of his death and where the property had its legal situs.

In the case of *Baldwin* v. *Missouri*, 281 U. S. 586, 50 S. Ct. 436, a resident of the State of Illinois died there owning certain bank deposits in banks located in the State of Missouri and certain coupon bonds of the United States and promissory notes on deposit for safe keeping in the State of Missouri. It was held that the State of Missouri could not levy a tax upon the succession to this property because its legal situs followed that of its owner and was in the State of Illinois. The court said that bank deposits were mere credits, and for purposes of *ad valorem* taxation have their situs at the domicile of the creditor only. The certificate of deposit was merely the evidence of title of the owner of the deposit, and he might carry that with him wherever he went. So, too, the notes and United States coupon bonds, under the rule that the situs of personal property follows the

owner, acquired a legal situs in the place where he resided. Under that rule, they were taxable as property at the owner's domicile, which became their legal situs, and the succession tax should have been laid in the State where the owner of these evidences of debt resided. If the evidences of debt had been destroyed, the right of the owner to demand payment of the debts would have remained. The court, in effect, held that the decedent was a creditor to whom the obligors in the various bonds were indebted and to whom the banks in which he had deposited money were indebted. The extent and terms of the obligations were evidenced by the bonds and by the certificates of deposit. The local situs was at the creditor's domicile; and, being choses in action with situs at the domicile of the creditor, they were taxable as property there. Then, too, as said by the court in the case last cited, at that place they pass from the dead to the living, there this transfer was actually taxed. Because they were not within the State of Missouri for taxation purposes, that State had no power to levy a transfer tax.

Again, in *Beidler* v. *South Carolina Tax Commission,* 282 U. S. 1, 51 S. Ct. 154, 75 Law Ed. 69, dividends due from a South Carolina corporation were held not subject to a transfer tax in the State of South Carolina where the creditor of the corporation died in Chicago, Illinois, testate, and was a resident of that State at the time of his death. The court said that, although the corporate property was situated in the State of South Carolina, that State had no jurisdiction to impose a transfer tax upon the debt owed by the corporation to a nonresident. In this connection, it may be stated that the payment of a succession tax to the State of South Carolina with respect to the shares of stock owned by the nonresident testator in the domestic corporation in the State of South Carolina was not contested by the executors. This shows that they recognized that the corporation was a creature of the State of South Carolina,

and that the shares of stock were property there under the laws of that State. While there was no adjudication to that effect, still it is worthy of note that the executors recognized this to be the law.

This brings us to a consideration of the question whether the shares of stock in the present case, under the principles of law above announced, had a legal situs in the State of Tennessee where their owner resided and died. In short, the question presents itself, is the situs of the property owned by a shareholder in a State where the corporation exists or at the domicile of the shareholder. Corporate shares of stock are property within the broad meaning of that term. Certificates of stock in the hands of their holder represent the number of shares which the corporation certifies that he is entitled to and are mere evidence of his title. In the case of bonds and certificates of deposit in a bank, the certificates represent but a property in the debt and that follows the creditor's person. Not so in the case of certificates of shares of stock in a corporation. The corporation is the creature of State laws, and those who become its members and shareholders are subject to the operation of these laws.

Under our Constitution, private corporations may be formed under general laws, which may be from time to time altered or repealed. Article 12, § 6, of the Constitution of 1874. So, too, our Constitution makes all property subject to taxation except certain property specifically exempted, about which we have no concern in the present case. Article 16, § 5, of the Constitution of 1874. Corporate property is not exempt from taxation under our Constitution, and § 6 of the same article provides that all laws exempting property from taxation other than as provided in the Constitution are void.

In *Hawley* v. *Malden*, 232 U. S. 1, 34 S. Ct. 201, it was said that undoubtedly the State in which a corporation is organized may provide in creating it for the taxation in that State of all its shares, whether owned by

residents or nonresidents, and *Corry* v. *Baltimore,* 196 U. S. 467, 25 S. Ct. 297, was cited as sustaining the holding. The reason that the State has such power is by virtue of the authority of the statute creating the corporation to determine the basis of organization and the liability of shareholders. If it be said that the situs of the shares of stock of a corporation should follow the owner, then grave inequalities might arise in the matter. Business corporations might be organized in this State almost wholly upon foreign capital with a few shares held in the name of resident directors, and yet none of these shares of stock held by nonresidents, however valuable, would be subject to a property tax. As we have already seen, if they followed the situs of their owner, they may be taxed as property where the owner resided and not in the State where the corporation was created and upon whose laws they relied for the conduct of their business. This would necessarily result in unfair discrimination against resident stockholders. This court is committed to the rule that shares of stock of a domestic corporation organized under the laws of this State and doing business here may be taxed as property in this State. *Harris Lumber Co.* v. *Grandstaff,* 78 Ark. 187, 95 S. W. 772; *Dallas County* v. *Banks,* 87 Ark. 484, 113 S. W. 37; *Dallas County* v. *Home Fire Ins. Co.,* 97 Ark. 254, 133 S. W. 1113; *Fort Smith Lumber Co.* v. *State,* 138 Ark. 581, 211 S. W. 662, affirmed in 251 U. S. 532, 40 S. Ct. 304.

If the shares of stock may be taxed as property, whether held by residents or nonresidents, such shares will remain as property here until the death of the owner and then pass to the successor subject to the transfer laws of this State.

We are of the opinion that the situs of shares of stock of a domestic corporation is permanently fixed by the Constitution and laws under which they are created and transact their business, and that there is no reason to apply the rule that they follow the owner's domicile.

It is urged that a transfer tax might, also, be levied by the State of Tennessee where the testator resided, and thus the shares would be subjected to double taxation. This court is not concerned with that question. The principal issue before us is whether or not shares of stock acquire a situs where the owner resides and should be taxed as property there. If so, then it would seem that a transfer tax should also be levied in the State where the owner resided. On the other hand, if the situs of the property owned by the shareholder in a corporation remains in the State where the corporation was organized and under whose laws it exists and transacts its business, then the situs of the property is where the corporation exists and not that of the domicile of the shareholder. This being so, the transfer tax levied by this State would be valid and enforceable, for the reason that the shares of stock would pass from the dead to the living here.

We think that the shares of stock in a corporation organized under the laws of this State and belonging to a nonresident decedent are property within the jurisdiction of this State and are subject to our laws relating to an *ad valorem* tax on property and to an inheritance tax upon the death of the owner. A recent case holding that shares of stock in a corporation organized under the laws of the taxing State are subject to a transfer or inheritance tax in the case of a nonresident decedent owner is *State ex rel. Attorney General* v. *First National Bank of Boston*, 130 Me. 123, 154 Atl. 103. In that case, the court quoted with approval from *Rhode Island Hospital Trust Co.* v *Doughton*, 270 U. S. 69, 46 S. Ct. 256, the following:

"In the matter of intangibles, like choses in action, shares of stock, and bonds, the situs of which is with the owner, a transfer tax, of course, may properly be levied by the State in which he resides. So, too, it is well established that the State in which a corporation is organized may provide, in creating it, for the taxation in

that State of all its shares, whether owned by residents or nonresidents.''

Therefore, we hold in the present case that the inheritance or transfer tax was collected under a valid statute, and that appellee was not entitled to a refund of it under the provisions of § 12, of act 106 passed by the Legislature of 1929. See Acts of 1929, vol. 1, page 526. We do not think that such an act violates the provisions of the Fourteenth Amendment to the Constitution of the United States. Therefore, the judgment will be reversed, and the cause will be remanded with directions to order to be dismissed the complaint of appellee and for other proceedings according to law.

Opinion on rehearing delivered March 28, 1932.

HART, C. J. On the 29th day of June, 1931, an opinion was delivered in this case in which it was held that shares of stock in a domestic corporation, organized under the laws of this State and doing business here, whether held by residents or nonresidents, are taxable as property in this State; and such shares remain as property here until the death of the owner when they pass to his successor, subject to the inheritance laws of this State. Consequently, the judgment of the circuit court was reversed, and the cause was remanded with directions to dismiss the complaint of appellee. There was a motion for rehearing filed by appellee within the time required by statute; but, by leave of the court, obtained upon the consent of the parties, the cause was passed for further consideration until a case containing a similar question was decided by the Supreme Court of the United States.

On January 4, 1932, the case of *First National Bank of Boston* v. *State of Maine,* upon appeal from the Supreme Court of the State of Maine was decided by the Supreme Court of the United States [284 U. S. 312, 52 S. Ct. 174]. In an opinion delivered by Mr. Justice SUTHERLAND, it was held that shares of corporate stock, like certain other specific intangible property, money, bonds,

notes, and credits can be subject to inheritance tax by one State only. It was further held that shares of stock in a Maine corporation belonging to the estate of decedent, domiciled in Massachusetts, were not subject to an inheritance tax in Maine, because this would be in violation of the Fourteenth Amendment of the Constitution of the United States. A dissenting opinion was delivered by Mr. Justice STONE, which was concurred in by Mr. Justice HOLMES, and Mr. Justice BRANDEIS.

It becomes our duty to follow the opinion of the Supreme Court of the United States because that court held that the exaction of a similar tax was not within the power of the States under the Fourteenth Amendment. Consequently, it is earnestly insisted that a rehearing should be granted, and the judgment of the circuit court should be affirmed.

This, by no means follows for the reason that the record in the case before us shows that the payment of the tax by appellee was voluntary within the meaning of the law, and under our rules of practice our former opinion ordinarily would have been placed upon that ground. We decided the question of the constitutionality of the act merely because of the public interest involved in the matter. *Trammell* v. *Bradley*, 37 Ark. 374; and *McClure* v. *Topf & Wright*, 112 Ark. 342, 166 S. W. 171.

This court has followed the general rule that one who voluntarily pays a tax, imposed by a law unconstitutional in whole or in part, can not recover the amount so paid. *Board of Directors of Crawford County Levee District* v. *Dunbar*, 107 Ark. 285, 155 S. W. 96. For illustrative cases, see notes to 48 A. L. R. commencing at page 1381 and 74 A. L. R., commencing at page 1301. The later cases of *Dickinson* v. *Housley*, 130 Ark. 259, 197 S. W. 25; and *White River Lumber Company* v. *Elliott*, 146 Ark. 551, 226 S. W. 164, follow the same rule; but, under the facts of these cases, the payment of the taxes was held to be involuntary. In the Dickinson case, the increase of valuation by the Board of

Equalization was held to be illegal, and the taxpayer, having paid the amount under protest, was held entitled to recover it from the collector who still had the funds in his hands at the time the suit was brought. In the White River Lumber Company case, payment was held to be involuntary because the collector would have sold the lands of the taxpayer for the nonpayment of the taxes, and this would have constituted a cloud upon his title.

In the present case, the record shows that on March 9, 1928, appellant, by her proper officer, and appellee, by proper representatives, appeared in the probate court of Jefferson County in the matter of the State inheritance tax upon the estate of Nellie Hicks Hunter, deceased. Nellie Hicks Hunter died testate on the 19th day of January, 1927, a resident of Memphis, Shelby County, Tennessee. The court found that there was an inheritance tax due the State of Arkansas in the sum of $7,796.88, and judgment was rendered in favor of appellant against appellees for that amount. The judgment further recites that it being made to appear to the court that said tax has been paid in full, as evidenced by the State Treasurer's receipt with certificate attached, the judgment has been satisfied in full, and that the above-described property is free from all claims of the State of Arkansas on account of said inheritance tax.

The proceedings for the collection of the tax were had pursuant to the provisions of § 10,288 of Crawford & Moses' Digest, which was the law in force at that time for the collection of inheritance taxes. The section provides for the filing of the complaint by the officers of the State whose duty it was to collect the taxes, and that a summons be issued and served on the defendants. The section also provides that the case shall be tried before the probate judge without a jury upon oral testimony or depositions. The section further provides that appeal may be taken from the judgment of the probate court to the circuit court by either party.

No appeal was taken from the judgment of the probate court. On July 9, 1930, appellee filed the present suit in the probate court against appellant. This suit was decided in favor of appellee by the probate court, and was appealed to the circuit court. There the case was tried upon the agreed statement of facts, as will appear from our former opinion and from the statement made above. There was again a judgment in favor of appellee, and appellant filed a motion for a new trial on the ground that the judgment of the circuit court was contrary to law. The case in apt time was brought to this court, and the motion for a new trial filed by appellant in the circuit court raised the question of whether the payment was a voluntary or involuntary one. For the reasons given above, we are of the opinion that the payment was voluntary, made under a mistake of law, but with a full knowledge of all the facts, and can not be recovered.

This was undoubtedly the law at the time the first judgment was rendered in the probate court on March 9, 1928. The Legislature of 1929 passed act 106 for the purpose of amending the inheritance laws of the State of Arkansas. Acts of 1929, vol. 1, page 526. Section 6 of the act made some amendments to § 10,228 of Crawford & Moses' Digest, which is not pertinent to the issue raised by the appeal.

Counsel for appellee bases its right to recover the tax under § 12 of the act 106 of the Acts of 1929 above referred to. That section provides that claims for return of inheritance taxes heretofore or hereafter wrongfully and illegally collected may be made within five years from and after the date of payment of said tax and shall be filed in the probate court having original jurisdiction. It further provides for making the Commissioner of Revenues a party defendant and allows appeal by either party to the circuit court.

We do not think that section was meant by the Legislature to apply to cases like the present one. As we have

just seen, the State and the taxpayer were both parties in the probate court and judgment was rendered for the payment of the tax without objection. The judgment recites that it was satisfied in full by the payment of the tax awarded and by the taking of the State Treasurer's receipt therefor. Hence, as we have already seen, the tax was not wrongfully and illegally collected.

The tax might have been paid by appellee without suit and under protest, or it might have been recovered by suit. The record shows that it was recovered in the latter way. Resort to judicial proceedings on the part of the State against appellee was necessary to collect and enforce the tax. The statute provides for this mode of collection. If appellee had declined to pay it, it necessarily followed that, under the statutory mode of proceeding, it would have had its day in court where it could raise the question of its liability for the tax. If it had paid the tax under protest and for the purpose of preventing a cloud upon the title to its property, it would be entitled to recover under the section just referred to, providing for the recovery of inheritance taxes wrongfully and illegally collected. The mere fact that the act under which the money was paid was unconstitutional in part and the tax for that reason illegally laid is not sufficient to authorize an action to recover back the amount paid under § 12 of act 106, passed by the Legislature of 1929. That act was passed to enable the taxpayer to recover taxes illegally or wrongfully paid without suit, and where they were paid under protest or some act which would be deemed in law an involuntary payment. It was never intended to apply to cases where the taxpayer had paid the tax when he had had his day in court and failed to avail himself of it and thereby give him the right to litigate over again the matter which had become *res judicata* by his failing to appeal and by his voluntary payment of the tax to satisfy the judgment. The motion for rehearing will therefore be overruled.