ALTA RISOR, ADMINISTRATRIX *v.* GORDON BROWN

5-4873                                          446 S. W. 2d 202

Opinion delivered November 3, 1969

*Smith, Williams, Friday & Bowen;* By: *Byron M. Eiseman, Jr.,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* for appellee.

GEORGE ROSE SMITH, Justice. This suit was brought by the appellant, as administratrix of the estate of Oddie M. Anderson, deceased, to require the appellee, Gordon Brown, to contribute his proportionate share of the federal and state estate taxes that had been paid by the administratrix upon the decedent's estate. This appeal is from a decree holding that Brown is under no duty to contribute to the payment of the taxes (except with respect to a small testamentary bequest not in issue).

The facts are not in dispute. On March 4, 1964, Mrs. Anderson gave Brown securities worth $22,000. The donor was then 86 years old and suffered from an incurable degenerative process of the spinal cord. Within a few months Mrs. Anderson was taken to a hospital, where she died in the following October. In an earlier declaratory judgment proceeding it was held that the gift to Brown was valid, as against an assertion that it had been procured by undue influence and by an abuse of a confidential relationship. *Barrineau* v. *Brown,* 240 Ark. 599, 401 S. W. 2d 30 (1966).

Thereafter the federal taxing authorities determined that the gift to Brown had been made in contemplation of death, so that the value of the gift was to be included in the decedent's estate for tax purposes. That determination was accepted by the state revenue department and by the parties to the present dispute. Thus it is an uncontroverted fact that the gift to Brown was in contemplation of death.

The question now before us is whether the recipient of such a gift must bear his proportionate part of the estate taxes. That question turns upon the proper construction of our apportionment statute, § 1 of Act 99 of 1943, which reads as follows:

Except as otherwise directed by the decedent's will,

> the burden of any State and Federal Estate, Death, and Inheritance Taxes paid by the executor or administrator shall be spread proportionately among the distributees, and/or beneficiaries of the estate, so that each shall bear his proportionate part of said burden. [Ark. Stat. Ann. § 63-150 (1947).]

When one studies the language of the apportionment act itself, and the language of the three prior decisions that are pertinent to the present problem, it is plain that the recipient of a gift which was includible in the decedent's estate as having been made in contemplation of death, must bear his fair share of the estate taxes assessed by the federal and state governments.

It has long been the rule that state law—not federal law—determines the manner in which the burden of the federal estate tax is to be distributed among the beneficiaries of an estate. At first Arkansas had no apportionment statute. That deficiency in our law led to the inequitable result that the court felt itself compelled to reach in the first of the three decisions to which we have alluded: *Thompson* v. *Union & Merc. Tr. Co.*, 164 Ark. 411, 262 S. W. 324, 37 A. L. R. 536 (1924). There we held that the widow was not required to contribute to the payment of the federal estate tax, even though the value of her dower was included in the valuation upon which the tax was computed. We thought it appropriate to explain that we had no choice in the matter: "We have nothing to do with the justice or the policy of our laws in this regard, as that is a matter entirely for the legislative branch of government."

Late in 1942 the Supreme Court of the United States handed down the next pertinent decision: *Riggs* v. *Del Drago,* 317 U. S. 95 (1942). That case involved a New York apportionment statute. The state trial court had held that under the statute the tax should be equitably apportioned among all the persons beneficially interested in the estate. The New York appellate court

reversed that decision, under the mistaken impression that the federal estate tax law did not permit the states to accomplish such a fair and just distribution of the federal tax burden. That appellate decision was in turn reversed by the United States Supreme Court, which upheld the validity of the state statute.

The *Riggs* decision made it clear to the states that by appropriate legislation they could put into effect an equitable distribution of the tax burden. The Arkansas General Assembly at once acted upon that invitation by the adoption of the apportionment act now before us, Act 99 of 1943. That the act stemmed from the *Riggs* decision cannot be doubted, for the language of the act is almost a verbatim copy of the Supreme Court's paraphrase of the New York law in the first paragraph of the *Riggs* opinion.

The apportionment act came before us for interpretation in the third pertinent case: *Terral* v. *Terral,* 212 Ark. 221, 205 S. W. 2d 198, 1 A. L. R. 2d 1092 (1947). There the widow argued, on the authority of the *Thompson* case, *supra,* that she ought not to be required to bear her fair share of the tax, even though the amount of the tax had been swelled by the inclusion in the tax base of the value of her dower and of her interest as surviving tenant by the entirety. We rejected that argument, pointing out that if the legislature had meant to continue in force the (inequitable) rule of the *Thompson* case it would have used appropriate language to accomplish that result.

Specifically, the widow in the *Terral* case insisted that she was not a distributee or beneficiary of her husband's estate, within that clause of the apportionment act which directs that the tax burden be spread proportionately among ''the distributees, and/or beneficiaries of the estate.'' We found that argument unsound, holding that the words were used in a nontechnical sense to include all persons in whom the law might vest any part of the intestate's property.

That decision is controlling here. Mrs. Terral's dower and survivorship interests did not pass through the hands of her husband's personal representative, but she was nevertheless a beneficiary of his taxable estate within the apportionment act. Similarly, the gift to Brown did not pass through the hands of Mrs. Anderson's personal representative, but Brown was nevertheless a beneficiary of her taxable estate. The whole point and it is a simple one—is that both Mrs. Terral and the appellee Brown were the recipients of property which constituted a part of the decedent's taxable estate and increased the amount of the tax. If the key word "proportionate" in our apportionment act means anything at all, it means that those who receive a portion of the decedent's taxable estate must bear their just part of the tax burden. Here Brown received, we are told, 13.4906% of Mrs. Anderson's taxable estate. The apportionment act achieves justice by requiring that he bear that same proportionate part of the estate taxes paid by the administratrix. Nothing could be more simple or more fair.

Reversed.

FOGLEMAN, JONES and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent because I firmly believe that the majority has extended the application of our estate tax apportionment statute by construction. I further feel that the effect of this extension is actually contrary to the intention of the General Assembly in at least one respect; i. e., one who desires to make a completed gift inter vivos must, if he desires to insulate it from estate tax liability, make a will if he does not have one and would not otherwise make one, or, if he has made a will, he must either revoke it and make another or amend it by codicil. This may be exactly what the donor sought to avoid by making the gift especially if the gift is in contemplation of death. I cannot read this requirement into our statute.

There are facts in the record but not stated in the majority opinion which I consider pertinent in consideration of this case. At the time of Mrs. Anderson's death, she had not filed a gift tax return on this and other gifts made by her on the same date she made the one involved here. Her will and first codicil were executed approximately four years prior to this gift. Neither the will nor the codicil contained any directions concerning the estate tax burden. The decedent did direct that, after payment of debts, expenses of administration and certain bequests, the personal representative convert all stocks, bonds and other evidences of indebtedness into cash and purchase a refund plan annuity for her niece. While estate tax returns were filed by her personal representative, the assets involved in this gift were not included. The accountant who prepared these returns did not prepare any gift tax return, even though it was the responsibility of the decedent to have done so before April 15, 1965. 26 U. S. C. A. §§ 6019, 6075. Since she died before she filed the return, the duty to do so devolved upon her personal representative. See Int. Rev. Serv. Reg. § 25.6019-1(b) (1969); 1 CCH Fed. Est. & Gift Tax Rep. § 4021, p. 5032. The tax on this gift was due when the return was filed. 26 U. S. C. A. § 6151. The tax is to be paid by the donor. 26 U. S. C. A. § 2502. It is only when the tax is not paid when due that any liability attaches to the donee of a gift. 26 U. S. C. A. § 6324(a) (2). If the tax is collected from a donee, he is entitled to reimbursement either out of any part of the estate still undistributed or by a just and equitable contribution by those whose interest in the estate of the decedent would have been reduced if the tax had been paid before distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes. 26 U. S. C. A. § 2205. The excuse given for the personal representative's not filing this return was that the validity of the gift was then in question. Even though any doubt on this score was resolved by our decision in *Barrineau* v. *Brown,* 240 Ark. 599, 401 S. W. 2d 30, on April 4, 1966, no gift tax return has ever been

filed. After the federal Internal Revenue Service made a determination that the gift was made in contemplation of death, no effort was made to collect the $22,401.08 tax assessed, or any part thereof, from anyone other than the personal representative. The total amount of the estate tax was not any different from what it would have been had a gift tax return been filed because the gift tax of $13,070.00 on the gifts would have been credited upon the estate tax assessed. 26 U. S. C. A. § 2012.

My reading of our statute and the pertinent Arkansas decisions leads me to a conclusion directly contrary to that of the majority. Appellant argues here that the chancellor's error was twofold. First, she says that the term "estate" as used in Ark. Stat. Ann. § 63-150 (Supp. 1967) actually means "gross estate" for federal estate tax purposes, contrary to the chancery court holding. Next, she contends that appellee was a "distributee and/or beneficiary" of the estate of Mrs. Anderson within the meaning of that term as used in § 63-150.

In determining the meaning of these critical words, we should keep in mind the entire statutory background. It must be remembered that both the federal and state taxes are "estate," not "inheritance" taxes, i. e., both are taxes on the transfer of property by the decedent at his death while an inheritance tax is a tax upon the right to receive, or upon the taking of, property by a beneficiary or distributee. 26 U. S. C. A. §§ 2001, 2002; 42 Am. Jur. 2d 217-221, Inheritance, etc. Taxes §§ 2, 3, and 4 (1969); *Riggs* v. *Del Drago*, 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. 106 (1942); *Young Men's Christian Association* v. *Davis*, 264 U. S. 47, 44 S. Ct. 291, 68 L. Ed. 558 (1924); *New York Trust Company* v. *Eisner*, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660 (1921); *Thompson* v. *Union and Mercantile Trust Co.*, 164 Ark. 411, 262 S. W. 324; Ark. Stat. Ann. §§ 63-101, et seq.; Annot., 1 A. L. R. 2d 1104 (1948); *Gates* v. *Bank of Commerce and Trust Co.*, 185 Ark. 502, 47 S. W. 2d 806, 10 Law School Bull. (Ark.) 30 (1941).

The federal estate tax is imposed upon the "taxable estate." 26 U. S. C. A. § 2001. This is determined by deducting from the value of the "gross estate" the exemptions and deductions provided for in the Internal Revenue Code. 26 U. S. C. A. §§ 2051—2056. "Gross estate" for the purpose of determining the taxable estate is defined by 26 U. S. C. A. §§ 2031—2034. It includes the value of property of which the decedent has made a transfer in contemplation of death. There is a presumption, subject to rebuttal, that any such transfer within a period of three years prior to the date of death of decedent was a gift made in contemplation of death. 26 U. S. C. A. § 2035. The purpose and intent of the federal internal revenue laws, as stated in 26 U. S. C. A. § 2205, is that, so far as is practicable and unless otherwise directed by the will of the decedent, the tax shall be paid out of the estate before its distribution. Under the code, the executor is entitled to recover from the beneficiary of policies of life insurance on the life of the decedent such portion of the total tax paid as the proceeds of the policies bear to the sum of the *taxable estate*. 26 U. S. C. A. § 2206. Provision is also made for the recovery by the executor of a pro rata amount from persons receiving property by reason of the exercise, nonexercise or release of a power of appointment. 26 U. S. C. A. § 2207. No other provision is made by federal law for recovery of any part of the tax by the executor.

Prior to the passage of our apportionment act, it was clearly the law in Arkansas that the estate tax constituted a claim against the estate. The idea of an equitable apportionment of the tax under which there would be an allocation among all who enjoy the benefits of the property included in a decedent's gross estate, was rejected by this court in *Thompson* v. *Union & Mercantile Trust Co.*, 164 Ark. 411, 262 S. W. 324, where we said:

"* * * Though the tax is a lien on the whole estate, it is discharged, like other claims against the estate,

out of property other than the widow's dower, and the fact that it is a lien and that the government may enforce that lien, even against dower property, does not make the dower taxable as against the heirs of the decedent. We have nothing to do with the justice or the policy of our laws in this regard, as that is a matter entirely for the legislative branch of government."

Until the decision in *Riggs* v. *Del Drago,* 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. 106, (1942), it seems that there was no question that the ultimate burden of an estate tax fell upon the residuary estate in the absence of statute or testamentary provision to the contrary. The weight of authority seems to remain so, even after that decision. See Annotations, 142 A. L. R. 1135, 1137 (1943); 37 A. L. R. 2d 7, 109 (1954); 37 A. L. R. 2d 169, 171, 176 (1954); 37 A. L. R. 2d 199, 203 (1954). When our legislative branch undertook to deal with the matter after that decision it is significant that it chose language decidedly different from that of the New York statute, which, like some other state statutes, specifically provides for *equitable* proration among persons interested in the property *required to be included in the gross estate under the tax law.* N. Y. Decedent Estate Law § 124 (McKinney 1949). The significance is that this language of the New York statute does not appear in the Arkansas act. While there is no doubt that the Arkansas legislation stemmed from the *Riggs* decision, the selection of the "paraphrase" of the act there under consideration and the omission of the language read into our statute by the majority must have been intentional. In the *Riggs* case the courts were dealing only with property which was the subject of testamentary bequests and legacies. After referring to the controlling federal legislation relating to collection of proportionate shares of the tax from beneficiaries of life insurance includable in the gross estate and from a person receiving property subject to a power, the United States Supreme Court said:

"\* \* \* But these sections deal with property which does not pass through the executor's hands and the congressional direction with regard to such property is wholly compatible with the intent to leave the determination of the burden of the estate tax to state law *as to properties actually handled as part of the estate by the executor."* (Emphasis mine.)

Consequently, we can only take the language employed in that opinion to describe the effect of the New York statute to refer only to the situation then before it and not to encompass valid, completed inter vivos gifts. Thus, we must interpret our own statute according to its own language.

In our first construction of our statute we held that property passing to the widow in the form of dower and statutory allowances and as surviving tenant of an estate by the entirety should bear its proportionate share of estate taxes. In doing so, we followed the rule that we must consider the usual and ordinary nontechnical interpretation of such words as "distributee" and "beneficiary," in reference to the subject matter in the minds of the legislators. *Terral* v. *Terral,* 212 Ark. 221, 205 S. W. 2d 198. We said that these words referred to *all persons in whom the law might vest any part of the property of the intestate.* The logic of the decision in the *Terral* case is sound and is in harmony with the general scheme relating to both federal and state estate taxes. The definition arrived at in that case is bulwarked when we consider the usual meaning of the critical words. In the sense used here the word *beneficiary* is given the following meanings:

*Webster's Third New International Dictionary*

"2: one who receives something: as (a): the person designated to receive the income of a trust estate (b): the person named (as in an insurance or

annuity policy) as the one who is to receive proceeds or benefits accruing''

*Random House Dictionary of the English Language*

''1. one who receives benefits, profits or advantages 2. a person designated as the recipient of funds or other property under a trust, insurance policy, etc.''

*Bouvier's Law Dictionary*

''A substitute for cestui que trust; the person named in a policy of insurance to whom the insurance is payable upon the happening of the event insured against.''

Definitions of *distributee* in the ordinary sense are:

*Webster's Third New International Dictionary*
''one to whom something is or is to be distributed: *esp*: one sharing in or entitled to share in an estate''

*Random House Dictionary of the English Language*
''a person who shares in a decedent's estate''

*Bouvier's Law Dictionary*
''The persons who are entitled under the statute of distribution to the personal estate of one who has died intestate.''

Definitions of the word *estate* include:

*Webster's Third New International Dictionary*

''4b(1): the aggregate of property or liabilities of all kinds that a person leaves for disposal at his death''

*Random House Dictionary of the English Language*

''the property of a deceased person viewed as an aggregate''

The property received by appellee more than seven months prior to the death of the decedent was not left by Mrs. Anderson to be divided at her death, was not vested in him by law and did not constitute her property, in any sense of the word, after the completed gift. Thus, appellee Brown did not receive anything that constituted a part of the estate of his donor, nor was anything vested in him by reason of the death of the donor.

This conclusion is consistent with the holding in *Williamson* v. *Williamson,* 224 Ark. 141, 272 S. W. 2d 72.[1] It was emphasized in that case that our statute does not come into play until the tax has been computed and paid by the personal representative. This is in keeping with the letter and spirit of the federal statute which requires payment of the tax by the executor in the first instance and which permits one such as appellee to recover from undistributed assets in the hands of the executor any amount collected from him by the Internal Revenue Service. I submit that the only result of the *Thompson* case rejected in the *Terral* case was the holding that property taken by the widow by reason of the death of her spouse would not bear any of the tax burden. I do not understand how it can possibly be said that the decision in the *Terral* case is controlling here. The only holdings there that do control have to do with the necessity of giving words in our apportionment statute their usual and ordinary nontechnical meaning. The words "distributee" and "beneficiary" were there said to refer to those persons in whom the law might vest any part of the property of the intestate. As above

[1]While the statute has been amended since the decision in the *Williamson* case, that amendment goes no farther than to provide that no part of the burden of the taxes shall be apportioned against that part of the property received by a surviving spouse which is deductible for federal estate tax purposes. It is evident that this amendment does not affect the decision in the *Williamson* case in any respect except as to property constituting the marital deduction under federal estate tax law. Professor Ray Trammell has said that, since the amendment, a testator must affirmatively direct an equitable apportionment, if there is to be one. Trammell, Act 122 Estate Tax Amendment, 9 Ark. L. Rev. 411, 413 (1955).

pointed out appellee could not be considered to have been one of those persons.

In *Williamson,* not mentioned in the majority opinion, the argument that the tax should be apportioned among those whose shares in an estate entered into the tax base was rejected. It was argued that the burden is to be spread proportionately only among those whose shares entered into the tax base, so that that portion of the estate vested in the widow but constituting the marital deduction would not pay any part of the tax. This court then said that the burden of the tax under our act was to be spread proportionately among the beneficiaries who share the *net remaining estate.* This estate was there described, insofar as distributees are concerned, as what is left after the federal demand has been satisfied. It is consistent with that holding to say that the statute requires the burden here to be borne among those who share all assets of which the decedent was possessed at the time of her death remaining after the payment of debts and expenses of administration and taxes and in which her interest ceased by reason of her death and which became vested in the distributee or beneficiary by law because of her death.

I humbly and sincerely submit that the court has now departed from the rule requiring that words in the statute be given their ordinary, nontechnical meaning and substituted the highly technical definition of ''gross estate'' in the federal Internal Revenue Code for the ordinary meaning of the word ''estate.'' It is not ordinarily understood that something that one gives away in his lifetime without any strings attached constitutes any part of his ''estate.''

The argument of appellee, that under any construction given the apportionment act, the estate of the decedent would be liable for the gift tax, has been ignored by the majority. The donor was primarily liable therefor. 26 U. S. C. A. § 2502(d); 1 CCH Fed. Est. & Gift Tax Rep., § 3090, p. 4328. Since the donor died before

the return was filed, the responsibility for filing it devolved upon the personal representative. Int. Rev. Serv. Reg., § 25.6019-1(b) (1969); 1 CCH Fed. Est. & Gift Tax Rep., § 4021, p. 5032. Since the donor died before the tax was paid the amount of the tax was a debt of the decedent's estate to the United States, and her executor or administrator was responsible for its payment out of the estate. Int. Rev. Serv. Reg., § 25.2502-2; 1 CCH Fed. Est. & Gift Tax Rep., § 3090, p. 4328. The claim for the tax had priority over all other claims. 31 U. S. C. A. § 191. It also constituted a lien against the property of the estate. 26 U. S. C. A. § 6321; 1 CCH Fed. Est. & Gift Tax Rep., § 4350, p. 5308; Int. Rev. Serv. Reg., § 301.6324-1(b) (1969). The personal representative becomes personally liable for the tax upon his failure to pay it from the assets of the estate. 31 U. S. C. A. § 192; Int. Rev. Serv. Reg., § 25.2502-2 (1969); 1 CCH Fed. Est. & Gift Tax Rep., § 3090, p. 4328. Since the gift tax was a debt of the decedent's estate, it should have been paid by the personal representative from the assets of the estate in his hands. The will of the decedent contained a clear direction to the executor to pay all of her just debts as speedily as possible out of any moneys or other property of which she might die seized and possessed. I. cannot undertand how it can be said that the tax to this extent should not be borne by the residuary estate.

It seems absurd to me that Mrs. Anderson could possibly be said to have intended that appellee net only $19,337.96 from a gift of $22,000. Yet this is the result reached by the majority. It is also obvious that, in making such a gift, a testator does not intend for a residuary legatee or devisee to be the object of his bounty to the extent originally contemplated when his will was drawn. The making of the gift inter vivos insures this without the necessity of drafting and executing a new will or codicil. The words of the Supreme Judicial Court of Massachusetts in *Warfield* v. *Merchants National Bank of Boston*, 337 Mass. 14, 147 N. E. 2d 809 (1958), are appropriate here:

"* * * We may not act in the place of the donor, and should not, in the guise of doing justice, modify legislative enactments. To assert that apportionment should be decreed in 'equity and good conscience' (*Carpenter* v. *Carpenter,* 364 Mo. 782, 796-797, 267 S. W. 2d 632, 642) we respectfully suggest begs the question."

We cannot refuse to give effect to the language of the statute merely because we think it brings about an inequitable result in a particular case. *Cupp* v. *Frazier's Heirs,* 239 Ark. 77, 387 S. W. 2d 328.

I would affirm the judgment of the trial court. At the very least, I would hold that the gift tax was a debt of Mrs. Anderson's estate, and that none of that tax should be borne by appellee.

JONES and BYRD, JJ., join in this dissent.